Date of Hearing to Approve Bid Procedures: March 7, 2017
Hearing Time: 2:00 p.m.
Hearing Place: Utica, New York
Objection Deadline: February 28, 2017

Date of Hearing to Approve Sale: June 13, 2017
Hearing Time: 2:00 p.m.
Hearing Place: Utica, New York
Objection Deadline: June 6, 2017

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

FOLTS HOME, *et al.*,[1]

                      Debtors.

Case No. 17-60139
Chapter 11 Cases
(Main Case)
Jointly Administered

_____

**DEBTORS' MOTION FOR ORDERS PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004: (A) (i) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, SUBJECT TO THE TERMS OF THE ASSET PURCHASE AGREEMENT AND SUBJECT TO HIGHER AND/OR BETTER OFFERS; (ii) AUTHORIZING AND APPROVING THE FORM OF A CERTAIN ASSET PURCHASE AGREEMENT WITH UPSTATE SERVICE GROUP, LLC; AND (iii) AUTHORIZING THE DEBTORS TO CONSUMMATE ALL TRANSACTIONS RELATED TO THE PROPOSED SALE; (B) APPROVING BIDDING PROCEDURES AND OTHER RELATED RELIEF; AND (C) AUTHORIZING DEBTORS TO ASSUME CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND ASSIGN SUCH CONTRACTS AND LEASES TO PURCHASER UPSTATE SERVICE GROUP, LLC PURSUANT TO 11 U.S.C. §§ 365(a), (b) AND (c) AND BANKRUPTCY RULE 6006(e)(1)**

Folts Home and Folts Adult Home, Inc., the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court (this "Motion") for entry of Orders pursuant to sections 105, 363 and 365 of title 11 of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Folts Home (2183) and Folts Adult Home, Inc. (7237).

2838229.1

the United States Code, as amended (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (A) (i) authorizing the sale of substantially all of the Debtors' assets to Upstate Service Group, LLC, or its designee ("Purchaser"), free and clear of all liens, claims, interests and encumbrances, subject to the terms of that certain Asset Purchase Agreement dated as of February 13, 2017, which is attached hereto as **Exhibit A** (the "Purchase Agreement"), and subject to higher and better offers; (ii) authorizing and approving the Purchase Agreement; and (iii) authorizing the Debtors to consummate all transactions related to the proposed sale; (B) approving the Bidding Procedures and granting other relief; and (C) authorizing the Debtors to assume certain executory contracts and unexpired leases of personal property and to assign such contracts and leases to Purchaser pursuant to sections 365(a), (b) and (c) of the Bankruptcy Code and Bankruptcy Rule 6006(e)(1). In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory and rule-based predicates for the relief requested herein are sections 105, 363 and 365 of the Bankruptcy Code and Rule 6004 of the Bankruptcy Rules.

## BACKGROUND

3. On February 16, 2017 (the "Petition Date"), the Debtors filed separate, voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of New York (the "Court"), commencing the Debtors' chapter 11 cases (the "Chapter 11 Cases"). The Debtors, through duly-appointed receivers HomeLife at

Folts, LLC and HomeLife at Folts-Claxton, LLC (collectively, "HomeLife"), continue to operate their skilled nursing home and adult residence businesses, respectively, and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for a trustee or examiner has been made in these Chapter 11 Cases and, as of the date of the filing of this Motion, no official committees have been appointed or designated. The Chapter 11 Cases are being jointly administered under Bankruptcy Rule 1015(b) pursuant to an order of the Court.

4. Folts Home is a New York not-for-profit corporation and the owner of a 163-bed long-term residential health care and rehabilitation facility located at 100-122 North Washington Street, Herkimer, New York 13350 (the "Nursing Home Facility"). In addition to long-term skilled nursing and residential care, Folts Home provides memory care to residents with dementia, palliative care and respite care and operates an adult day care program. Folts Home also offers rehabilitation services, such as physical, occupational and speech therapy, on both in-patient and out-patient bases.

5. FAH, also known as Folts-Claxton, is a New York not-for-profit corporation and the owner of an 80-bed adult residential center that was constructed in 1998 and is located at 104 North Washington Street, Herkimer, New York 13350 (the "Adult Home Facility", and together with the Nursing Home Facility, the "Facilities"). FAH residents reside in separate apartments and are provided services such as daily meals, laundry, housekeeping and medication assistance.

6. Folts Home and FAH currently have average daily censuses of 145 and 69, respectively. Folts Home has three (3) major payors: Medicare, Medicaid and Excellus/Blue Cross. The majority of FAH residents are government subsidized, with 58% covered by Social Security Insurance and 42% private pay.

7.    Currently, Folts Home has approximately 218 active employees. Approximately 124 of the employees are full-time, 60 are part-time and 34 employees are employed on a *per diem* basis. FAH has approximately 22 active employees. Approximately 12 are full-time employees and 10 are part-time employees. None of Folts Home's or FAH's employees are represented by labor unions.

8.    As a result of operating losses in 2011, 2012 and 2013 and the accumulation of significant debt during that period, the Debtors requested that the New York State Department of Health ("DOH") appoint receivers to operate the Facilities. As a result, receivers have operated the Facilities since October 1, 2013. HomeLife has operated the Facilities as receiver since February 14, 2015 and will continue in that capacity during the pendency of the Chapter 11 Cases.

9.    Pursuant to the Receivership Agreements dated November 1, 2014 executed by the Debtors, DOH and HomeLife, HomeLife entered into possession of the Facilities, including the real property, personal property and all of the Debtors' accounts, and was vested with all of the assets to be held in trust for the Debtors . In addition, for the duration of the receiverships, all of the Debtors' employees have become HomeLife employees. Further, HomeLife is authorized to use the Debtors' accounts receivable to operate the Facilities for its own account and be responsible for the profit and losses of the business conducted at the Facilities. HomeLife is responsible for all payables accrued during its tenure, but is not responsible for any liabilities incurred by the Debtors or other parties prior to the commencement date of the HomeLife receiverships. Any funds remaining in HomeLife's possession at the conclusion of the receiverships are the property of the Debtors. Finally, on or around February 14, 2015, the DOH

issued Operating Certificates to HomeLife for the Facilities and the Debtors surrendered their operating certificates to the DOH.

10. The Debtors seek relief under chapter 11 of the Bankruptcy Code to implement the sale of the Facilities as going concerns pursuant to section 363 of the Bankruptcy Code, and to address the numerous significant claims that accrued prior to October 1, 2013. The Debtors seek this relief in light of their financial inability to continue operating the Facilities, the fact that they have encountered operating losses since 2011, and their desire to sell the Facilities to a qualified purchaser who will protect the health, safety and welfare of the Folts Home and FAH residents and preserve the Debtors' long-standing mission to provide quality residential healthcare to members of the Herkimer community.

11. In order to ensure the continued operation of the Debtors' facilities, the retention of approximately 218 jobs and the fulfillment of its obligations to residents, on February 13, 2017, the Debtors entered into the Purchase Agreement with Purchaser, pursuant to which Purchaser proposes to purchase substantially all of the Debtors' assets (the "Assets"), free and clear of all liens, claims, interests and encumbrances, in exchange for (i) the payment of $9,500,000.00 in cash (ii) the assumption of certain liabilities, including obligations under acquired contracts and cure obligations under section 365(b)(1) of the Bankruptcy Code and (iii) $250,000.00 in cash to be used by the Sellers for the administration of the Chapter 11 Cases (the foregoing, totaling $9,750,000.00, are collectively, the "Purchase Consideration")[2]. The Purchase Agreement is subject to higher and better offers and to the approval of the Court.

---

[2] The U.S. Department of Housing and Urban Development will also recover and retain the funds currently deposited in the Folts Home Sinking Fund Account, totaling approximately $1,314,117.25 in connection with the sale of the Assets.

12. A more detailed factual background relating to the commencement of these Chapter 11 Cases is set forth in the *Joint Affidavit of Anthony E. Piana, DDS and James H. Morey in Support of Chapter 11 Petitions and First Day Motions and Pursuant to Local Rule 2015-6* sworn to on the 14th day of February, 2017 (the "Joint Affidavit") filed in these Chapter 11 Cases and incorporated herein by reference[3].

## RELIEF REQUESTED

13. By this Motion, the Debtors seek the entry by this Court of two orders:

   (a) first, an order (the "Bidding Procedures Order"), a proposed form of which is attached hereto as **Exhibit B**:

   i. providing a process for interested bidders to submit competing offers with respect to the Assets;

   ii. approving the form and manner of the Notice of Auction and Sale Hearing (as defined below) and the Notice of Assumption and Assignment (as defined below);

   iii. setting a deadline and approving requirements and procedures for interested parties to submit any competing bids for the Assets (the "Bidding Procedures");

   iv. approving the Purchaser as the "stalking horse" purchaser and approving the form of Purchase Agreement;

   v. authorizing an auction sale of the Assets, if necessary; and

   vi. setting a final hearing date (the "Sale Hearing") to approve the sale of the Assets to the bidder (the "Successful Bidder") submitting the highest or otherwise best offer (the "Successful Bid") acceptable to the Debtors.

   (b) second, the Debtors request the entry of an order (the "Sale Order"):

   i. authorizing and approving the Successful Bid on substantially the terms and conditions set forth in the Purchase Agreement, or such other terms and conditions as may be acceptable to the Debtors;

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Joint Affidavit.

    ii.  authorizing the sale of the Assets to the Successful Bidder;

    iii.  authorizing the Debtors to consummate the sale of the Assets to the Successful Bidder; and

    iv.  authorizing the Debtors to assume certain identified executory contracts and unexpired personal property leases and to assign such contracts and leases to the Successful Bidder.

## THE PROPOSED SALE OF ASSETS

14. The Debtors have determined that it is in the best interests of their estates, their creditors, their employees, the residents and other parties in interest to sell the Assets. The Debtors' management believes that the approval of the sale is critical to preserving their value for the benefit of all creditors and employees, and it is necessary to provide the Debtors' customers assurance that their contracts will be honored.

**A.** **The Purchase Agreement**

15. The Debtors' and Purchaser's extensive good faith negotiations culminated in the Purchase Agreement, which contemplates the sale of the Assets, in a single integrated transaction. The salient terms of the Purchase Agreement are as follows:[4]

  (a) <u>The Parties</u>. The Debtors as "Sellers" and Purchaser.

  (b) <u>The Assets</u>. The Assets to be sold pursuant to the Purchase Agreement are listed in Section 1.1 and Schedules 1.1(a) through (d), (g) and (j) thereto, and consist of substantially all of the assets owned by Sellers.

  (c) <u>Purchase Consideration</u>. (i) $9,500,000.00 in cash, (ii) the assumption by Purchaser of the Assumed Liabilities, plus (iii) $250,000.00 in cash to be used by the Sellers for the commencement of the Chapter 11 Cases, for a total Purchase Consideration of $9,750,000.00.[5]

---

[4] The following description of the terms of the Purchase Agreement is intended solely to provide the Court and interested parties with a brief overview of the terms thereof. All capitalized terms not otherwise defined herein have the meaning set forth in the Purchase Agreement.

[5] HUD will also recover and retain the funds currently deposited in the Folts Home Sinking Fund Account, totaling approximately $1,314,117.25 in connection with the sale of the Assets.

7

    (d)    <u>Conditions</u>. The proposed sale is subject to several conditions set forth in sections 10 and 11 of the Purchase Agreement, including: (i) appointment of Purchaser as a receiver or receipt by Purchaser of a CON or permanent license to operate the Debtors facilities; (ii) performance of covenants and agreements in the Purchase Agreement; (iii) termination or expiration of the HomeLife APA, (iv) approval by the Bankruptcy Court; and (v) receipt of all necessary consents, approvals and permits from third parties necessary to operate the Assets and convey the Assets free and clear of all liens.

    (e)    <u>Termination</u>. The Purchase Agreement terminates under certain circumstances set forth therein, including the following: (i) failure by Purchaser to file an CON application, obtain requisite approvals or to close the sale; (ii) by Purchaser, if Purchaser at any time is in in material breach of any representation, warranty or covenant under the Purchase Agreement; or (iii) by Seller, if Seller defaults under the terms of the Purchase Agreement and fails to cure such default within thirty days of receiving written notice of the default.

    (f)    <u>Alternative Transaction: Breakup Fee</u>. Under certain conditions, Purchaser may be entitled to a Breakup Fee of $150,000.00.

    (g)    <u>Higher and Better Offers</u>. As set forth in further detail below, the Sale of the Assets is subject to the submission by third parties of higher and/or better offers.

## B.    Proposed Bidding Procedures

16.    In an effort to ensure that the highest value is obtained for the Assets, the Debtors propose that the Bidding Procedures, which are intended to maximize the value of the Assets, should govern the submission of competing bids for the Assets.

17.    The Bidding Procedures are attached hereto as **Exhibit C,** the salient terms of which may be summarized as follows:

    (a)    <u>Assets</u>: The Assets to be sold are substantially all of the Debtors' assets, which are to be sold in a single, integrated transaction.

    (b)    <u>Qualified Bid / Qualified Bidders</u>: In order to ensure that only bidders with serious interest in the purchase of the Assets participate in the bidding process, the Bidding Procedures provide for certain minimal requirements for a potential bidder to become a "Qualified Bidder" and for a bid to purchase the Assets to be a "Qualified Bid", including:

      (i)      The execution of a confidentiality agreement;

      (ii)     Providing the Debtors with certain financial assurances regarding the bidder's ability to close a transaction;

      (iii)    Submission of a purchase agreement marked to show changes from the Purchase Agreement with Purchaser;

      (iv)    A purchase offer in excess of the Purchase Consideration by (a) the amount of the Breakup Fee and (b) $100,000.000, as set forth in detail in the Purchase Agreement; and

      (v)     Submission of a letter to the Debtors stating that (a) the potential bidder is prepared to enter into and consummate the transactions in accordance with the terms of the marked purchase agreement after the Bankruptcy Court's approval of the Sale Order; (b) the potential bidder will make all necessary federal, state or local filings and pay all fees associated with such filings (including the costs of expenses of the Debtors); and (c) such potential bidder's offer is irrevocable until the date that is twenty (20) days after the conclusion of the Sale Hearing.

(c)    Bid Deadline: The Bidding Procedures provide for a bid deadline of 4:00 p.m. on May 26, 2017 (the "Bid Deadline").

(d)    Due Diligence: The Bidding Procedures permit all potential bidders who have signed confidentiality agreements to participate in the due diligence process between February 17, 2017 and May 26, 2017.

(e)    Selection of the Qualified Bids: As soon as practicable after the Bid Deadline, the Debtors, in consultation with their professionals, and any committee appointed in these cases, shall review each bid submitted and determine which bidders are qualified to participate in the Auction ("Qualified Bidders"), and shall provide notice of same to all persons submitting bids.

(f)    Auction: If one or more Qualified Bids, other than Purchaser's, are received by the Sellers, an Auction shall be held on June 1, 2017 at 10:00 a.m. at the offices of Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, or such other time and/or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids with respect to the Assets subject to Auction.

At the Auction, Qualified Bidders, including Purchaser, will be permitted to increase their bids (such increased Qualified Bid, a "Qualified Overbid"), provided that such Qualified Overbid(s) shall exceed the highest existing bid by at least $100,000.00.

    The Auction shall not conclude until each Qualified Bidder has had the opportunity to submit a Qualified Overbid with full knowledge of the existing highest bid.

 (g) <u>The Sale Hearing</u>:  The Debtors request that the Court schedule the Sale Hearing for 2:00 p.m. on June 13, 2017.  At the Sale Hearing, the Debtors will seek entry of an order, among other things, authorizing and approving the sale of the Assets to the Successful Bidder, as determined by the Debtors.

    Following the Sale Hearing, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the next highest or otherwise best Qualified Bid or Qualified Overbid with respect to the Assets as disclosed at the Sale Hearing, shall be deemed to be the Successful Bid with respect to the Assets and the Sellers shall effectuate such sale without further order of the Bankruptcy Court.

 (h) <u>Reservation of Rights</u>:  The Debtors reserve all rights to terminate the sale process at any time if the Debtors determine, in their business judgment and following consultation with their professionals and any committee appointed in this case, that the sale process will not maximize the value of their bankruptcy estates.  In addition, the Debtors reserve all rights not to submit any bid which is not acceptable to the Debtors for approval to the Bankruptcy Court.  Debtors shall further have the right to amend the Bidding Procedures or impose such other terms and conditions with respect to the Bidding Procedures which Debtors determine, in their business judgment, are necessary for Debtors to fulfill their fiduciary duties, provided that such modifications are not inconsistent with any Bankruptcy Court order, including the Bidding Procedures Order.

18. Similar procedures have been employed successfully in the disposition of assets in other cases. *See e.g. In re Peak Resorts, Inc.,* Case No. 12-31471 (Bankr. N.D.N.Y. February 28, 2013); *In re The Albert Lindley Lee Memorial Hospital,* Case No. 09-30845 (Bankr. N.D.N.Y. April 21, 2009); *In re Northeast Biofuels, LP,* Case No. 09-30057 (Bankr. N.D.N.Y. March 20, 2009); *In re N.-Liquidation, Inc. f/k/a Nirvana, Inc. et al.*, Case No. 15-60823 (Bankr. N.D.N.Y. July 31, 2015); *In re Endicott Interconnect Technologies, Inc.*, Case No. 13-61156 (Bankr. N.D.N.Y. August 23, 2013).

**C.   Assumption and Assignment of Executory Contracts and Unexpired Personal Property Leases**

19.   The Debtors are parties to certain executory contracts and unexpired leases listed on Schedule 1.1(d) of the Purchase Agreement (the "Assumed Contracts").

20.   The Debtors have evaluated each of the Assumed Contracts in the context of the Bankruptcy Code. In the exercise of their business judgment, and due to the desire of Purchaser to continue operating the Debtors' businesses, the Debtors have determined that the Assumed Contracts are necessary to the proper continued operation of the businesses and their assumption and assignment to Purchaser is beneficial to their estates and creditors.

21.   The Debtors, therefore, seek to assume the Assumed Contracts listed on Schedule 1.1(d) of the Purchase Agreement pursuant to sections 365(a), (b) and (c) of the Bankruptcy Code and assign them to the Successful Bidder pursuant to the terms of such Purchase Agreement. The Debtors intend to remain current on their obligations due under the Assumed Contracts during the post-petition period until the closing of the sale to the Successful Bidder.

22.   There are various amounts of pre-petition arrears that have accrued in connection with the Assumed Contracts. Purchaser has agreed to assume all cure obligations which must be paid to counterparties to the Assumed Contracts pursuant to section 365(b)(1) of the Bankruptcy Code, as more fully described in the Purchase Agreement. Accordingly, the Debtors anticipate that all of the parties to the Contracts and Leases will consent to the assignment to Purchaser or the Successful Bidder in order to allow the continued operation of the Debtors' business.

23.   This motion complies with Bankruptcy Rule 6006(e)(1) because all of the Assumed Contracts listed on Schedule 1.1(d) to the Purchase Agreement will be assigned to a single assignee, the purchaser of the Assets.

**BASIS FOR RELIEF**

A. **The Proposed Sale is in the Best Interests of the Debtors, Their Creditors and Their Estates**

24. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). A debtor in possession is given these rights by section 1107(a) of the Bankruptcy Code. *See* 11 U.S.C. §1107(a). Moreover, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a).

25. Courts have uniformly held that approval of a proposed sale of property pursuant to section 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the debtor. See *e.g., In re Chateaugay Corp.,* 973 F.2d 141 (2d Cir. 1992); *Comm. of Equity Sec. Holders v. Lionel Corp (In re Lionel Corp.).* 772 F.2d 1063, 1071 (2d Cir. 1983); *In re Adelphia Commc'ns Corp.,* No. 02-41729 (REG) (Bankr. S.D.N.Y. July 31, 2002). *See also Official Comm. of Sub. Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed,* 3 F.3d 49 (2d Cir. 1993), quoting *Van Gorkom,* 488 A.2d 858, 872 (Del. 1985) ("the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interest of the company'," which has continued applicability in bankruptcy).

26. Courts generally show great deference to a debtor in possession's decisions when applying the business judgment standard. *See In re Global Crossing, Ltd.,* 295 B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a

bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the caselaw."). Deference is inappropriate only if such business judgment is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.),* 756 F.2d 1043, 1047 (4th Cir. 1985). *See also, In re Integrated Res., Inc.,* 147 B.R. at 656 (there is a strong presumption "that in making a business decision[,] the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company").

27. A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. See *e.g., In re Lionel Corp.*, 722 F.2d at 1071. In fact, the paramount goal in any proposed sale of property is to maximize the proceeds received by the estate. *See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.,* 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [debtors'] duty with respect to such sales is to obtain the highest price or greater overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

28. Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See In re Montgomery Ward Holding Corp.*, Case No. 97-1409(PJW) (Bankr. D. Del. Aug. 6, 1997); *In re Fruehauf Trailer Corp.*, Case

No. 96-LS63(PJW) (Bankr. D. Del. Feb. 26, 1997); *In re Integrated Res.*, 147 B.R. at 659 (such procedures are created to "encourage bidding and to maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

29. The Debtors submit that the proposed sale to Purchaser or any other Successful Bidder satisfies the "sound business reason test" and represents a prudent and proper exercise of the Debtors' business judgment. The Debtors believe that a prompt sale of the Assets is the only way to maximize the value of the Debtors' estates, to maintain stability for the residents, to preserve jobs and to ensure the continued operations of the Debtors' businesses.

30. The Debtors believe that the Bidding Procedures are the best method by which they can obtain the best price for the Assets and provide interested persons with accurate and reasonable notice of the proposed sale. The Bidding Procedures will allow the Debtors to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that the Debtors will receive the best possible consideration for the Assets. The Bidding Procedures also will enable the Debtors to undertake the auction process in as expeditious a manner as possible, which the Debtors believe is essential to maintaining and maximizing the value of their estates. Finally, the Debtors submit that the price offered by Purchaser for the Assets is fair and reasonable.

31. The Debtors believe that the best way to maximize the value of the Assets is to sell them as a single group, and part of a going concern, as set forth in the Purchase Agreement. In light of the fact that the Debtors' businesses involve the care of frail and elderly individuals

that is regulated by the DOH, and the Debtors' facilities are not slated for closure by the DOH, the Debtors believe that the sale of the Assets in separate lots would necessarily involve the closure of the Facilities, something that would not be authorized by DOH, and as such, the offer made by Purchaser was determined by the Debtors in their business judgment to be the best available offer for the Assets and the appropriate stalking horse offer for the Assets.

32. Finally, the Debtors believe that it is in the best interests of their estates to assume and assign the Assumed Contracts to the Successful Bidder in order to ensure the continued operation of the Debtors' business. A debtor in possession may assume an executory contract where assumption is a reasonable exercise of its business judgment. *See* 11 U.S.C. § 365(a); *see e.g., In re Stable Mews Assoc., Inc.,* 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984); *Allied Technology, Inc. v. R.B. Brunemann & Sons, Inc.,* 25 B.R. 484 (Bankr. S.D. Ohio 1982); *see also In re Extraction Techs.,* 296 B.R. 393, 399 (Bankr. E.D. Va. 2001); *In re Richmond Metal Finishers,* 756 F.2d at 1046-47. This requirement is satisfied where a debtor in possession determines in good faith that assumption of an executory contract will benefit the estate. *See In re Gucci,* 193 B.R. 411, 414-15 (S.D.N.Y. 1996).

33. The Debtors have been attempting to locate a willing purchaser of the Assets since 2013. It is unlikely that any other alternative, other than the sale, will, at this time, provide a higher value for the Assets, which supports the conclusion that the Debtors have exercised their good and prudent business judgment in proceeding with the proposed sale. Accordingly, the sale should be approved. Moreover, as set forth hereinafter, accurate and reasonable notice will be provided to all parties who indicate an interest with respect to the Assets, who previously indicated an interest in the Assets, and to all creditors and other parties in interest in compliance with the Bankruptcy Code and the Bankruptcy Rules.

34. All aspects of the proposed sale have been handled in good faith. The Purchase Agreement is the product of detailed good faith negotiations involving the Debtors, with the aid of their professionals, and Purchaser and its counsel.

## B. The Proposed Bidding Procedures are in the Best Interests of the Debtors, Their Creditors and their Estates

35. The Bidding Procedures outlined herein are designed to strike a balance between inviting competitive bids and enabling the Debtors to close a sale of the Assets within a reasonable time frame. The Bidding Procedures are fair, reasonable and necessary to promote the highest or best sale price, without imposing undue obstacles to the competitive bidding process.

36. The Bidding Procedures are a necessary tool to maximize the value of the Debtors' estates and will not unduly hamper the submission of competing bids. Rather, the Bidding Procedures will insure that only parties with (a) a serious and legitimate interest in acquiring the Assets and (b) the financial means to consummate a transaction quickly, will participate in an open Auction process.

37. For the foregoing reasons, the Debtors respectfully submit that this Court should authorize and approve the Bidding Procedures pursuant to section 363(b) of the Bankruptcy Code.

## C. The Purchase Agreement Should be Approved

38. Section 363(f) of the Bankruptcy Code[6] permits debtors, with court approval, to sell assets free and clear of all liens, claims, interests, charges and encumbrances (with any such

---

[6] Section 363(f) of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if --

(continued...)

liens, claims, interests, charges and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).

39. In the instant case, the Assets are encumbered by security interests and liens perfected by secured creditors securing the repayment of obligations totaling at least $20,198,899.92 as of the Petition Date. With respect to any party asserting a Lien against the Assets, the Debtors believe that they will be able to satisfy one or more of the conditions set forth in § 363(f). In particular, the Debtors believe that creditors with any interests in the Assets and/or Assumed Contracts, including the secured creditors, will consent to a proposed sale free and clear of Liens, if applicable. *See* 11 U.S.C. § 363(f)(2). The Debtors will continue to negotiate with secured creditors concerning their respective claims pending the Sale Hearing. To the extent such creditors do not consent explicitly or implicitly, the Debtors believe that the sale will satisfy one or more of the factors in section 363(f) and they will be permitted to sell the Assets free and clear of any interest in such property in accordance with the terms of the Purchase Agreement.

### D.    **Purchaser's Good Faith**

40. Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *In re Chateaugay Corp.,* 1993 U.S. Dist. LEXIS 6130, at *9 (S.D.N.Y. 1993) (quoting *In re Abbotts*

---

(1)   applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2)   such entity consents;
(3)   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4)   such interest is in bona fide dispute; or
(5)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

*Dairies of Penn., Inc.,* 788 F.2d 143, 147 (3d Cir. 1986)); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985).

41. The Purchase Agreement was negotiated in good faith, with both parties represented by their own counsel. The Debtors submit that Purchaser's proposal, as contained in the Purchase Agreement, represents the highest and best offer for the Assets received to date.

42. Accordingly, the Sale Order should include a provision finding that Purchaser or the Successful Bidder for the Assets is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code. The Debtors believe that providing Purchaser, or the Successful Bidder, with such protection will ensure that the maximum price will be received by the Debtors for the Assets and closing of the sale will occur promptly.

### PROPOSED NOTICE OF THE AUCTION AND SALE HEARING

43. Attached hereto as **Exhibit D** is a copy of a Notice (the "Notice of Auction and Sale Hearing") that the Debtors propose to serve upon (i) counsel for Purchaser; (ii) the Office of the United States Trustee for the Northern District of New York; (iii) counsel for HomeLife; (iv) counsel for HUD and the IRS; (v) counsel for the DOH; (vi) counsel for any committee appointed in these cases; (vii) all parties to the Assumed Contracts, (viii) all required governmental agencies, (ix) all creditors of the Debtors; and (x) all entities known by the Debtors to have filed a notice of appearance or a request for receipt of chapter 11 notices and pleadings filed in the Debtors' cases as of the notice date below.

44. The Debtors propose to serve the Notice of Auction and Sale Hearing via first class mail upon all designated parties not later than 5:00 p.m. on March 8, 2017. Such notice will provide all parties with far more than twenty-one (21) days notice of the June 13, 2017 Sale Hearing in compliance with the Local Bankruptcy Rules for the Northern District of New York.

45. Under all of the relevant facts and circumstances herein and the nature of the relief requested herein, the Debtors respectfully submit that the form of the proposed Notice of Auction and Sale Hearing should be deemed adequate and sufficient notice of the sale, the Sale Hearing, the Bidding Procedures, and the Motion, and respectfully request that the Court enter an Order approving the form and manner of the Notice of Auction and Sale Hearing.

### **PROPOSED NOTICE OF ASSUMPTION AND ASSIGNMENT**

46. Attached hereto as **Exhibit E** is a copy of a Notice (the "Notice of Assumption and Assignment") that the Debtors propose to serve upon (i) counsel for Purchaser; (ii) the Office of the United States Trustee for the Northern District of New York; (iii) counsel for HomeLife; (iv) counsel for HUD and the IRS; (v) counsel for the DOH; (vi) counsel for any committee appointed in these cases; (vii) all parties to the Assumed Contracts, (viii) all required governmental agencies, (ix) all creditors of the Debtors; and (x) all entities known by the Debtors to have filed a notice of appearance or a request for receipt of chapter 11 notices and pleadings filed in the Debtors' cases as of the notice date below.

47. The Debtors propose to serve the Notice of Assumption and Assignment via first class mail upon all designated parties not later than 5:00 p.m. on March 8, 2017. Such notice will provide all parties with far more than twenty-one (21) days notice of the June 13, 2017 Sale Hearing in compliance with the Local Bankruptcy Rules for the Northern District of New York.

48. Under all of the relevant facts and circumstances herein and the nature of the relief requested herein, the Debtors respectfully submit that the form of the proposed Notice of Assumption and Assignment should be deemed adequate and sufficient notice of the assumption and assignment of the Assumed Contracts, and respectfully request that the Court enter an Order approving the form and manner of the Notice of Assumption and Assignment.

2838229.1

49. No previous request for the relief sought herein has been made to this or any other Court.

**WHEREFORE,** the Debtors respectfully request that the Court (i) at the conclusion of the initial hearing, enter the Bidding Procedures Order approving the Bidding Procedures, the form and manner of the Sale Notice and scheduling the Sale Hearing, (ii) at the conclusion of the Sale Hearing, enter the Sale Order to be provided by Debtors authorizing the sale of the Assets to Purchaser, or to such other Successful Bidder that submits a higher and/or better offer for the Assets in accordance with the Bidding Procedures, (iii) at the conclusion of the Sale Hearing, enter an order authorizing the Debtors to assume and assign the Contracts and Leases to the Successful Bidder, and (iv) granting the Debtors such other relief as the Court may deem just and proper.

Dated: February 16, 2017
      Syracuse, New York

BOND, SCHOENECK & KING, PLLC

By:     /s/ Camille W. Hill
Stephen A. Donato, Bar Roll No. 101522
Camille W. Hill, Bar Roll No. 501876
Sarah M. Harvey, Bar Roll No. 519993
One Lincoln Center
Syracuse, New York 13202
Tel: (315) 218-8000
Fax: (315) 218-8100
Email: sdonato@bsk.com
      chill@bsk.com
      sharvey@bsk.com

*Proposed Counsel to the Debtors and Debtors in Possession*