Hearing Date:  May 23, 2017
Hearing Time:  9:30 a.m.
Hearing Place:  Utica, NY
Objection Deadline:  May 16, 2017

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

    FOLTS HOME, *et al.*,[1]

                            Debtors.

Case No. 17-60139
(Main Case)
Case No. 17-60140
Chapter 11 Case

Jointly Administered

## MOTION BY DEBTORS TO EXTEND THEIR EXCLUSIVE PERIODS AND ACCEPTANCE PERIODS UNDER 11 U.S.C. § 1121(d)

Debtors Folts Home ("Folts Home") and Folts Adult Home, Inc. ("FAH") (collectively the "Debtors"), by and through their attorneys, Bond, Schoeneck & King, PLLC, respectfully represent to the Court as follows:

1. On February 16, 2017 (the "Petition Date"), the Debtors filed separate, voluntary petitions for relief under chapter 11 of title 11 of the United States Code, U.S.C. §§ 101, et seq., as amended (the "Bankruptcy Code") with the United States Bankruptcy Court for the Northern District of New York (the "Court"). The chapter 11 cases are being jointly administered pursuant to an order of joint administration entered by the Court on February 16, 2017. The Debtors, through duly-appointed receivers HomeLife at Folts, LLC and HomeLife at Folts-Claxton, LLC (collectively, "HomeLife"), continue to operate their skilled nursing facility and adult residential facility, respectively.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Folts Home (2183) and Folts Adult Home, Inc. (7237).

2898508.1

2.      No request for a trustee or examiner has been made nor has an official committee been appointed or designated in these chapter 11 cases.

**Relief Requested**

3.      Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the date of the order for relief during which the debtor has the exclusive right to file a chapter 11 plan. Section 1121(c) of the Bankruptcy Code provides that if the debtor files a chapter 11 plan within the 120-day exclusivity period, it has a period of 180 days after the date of the order for relief to solicit and obtain acceptances, during which time competing plans may not be filed. In these cases, the Debtors' exclusive periods to file chapter 11 plans expire on June 16, 2017, and the attendant solicitation periods expire on August 15, 2017.

4.      By this motion (the "Motion"), the Debtors seek an order pursuant to section 1121(d) of the Bankruptcy Code extending the Debtors' exclusive periods within which to file and solicit acceptances of their chapter 11 plans (the "Debtors' Exclusive Periods") from June 16, 2017 and August 15, 2017, respectively, to October 14, 2017 and December 13, 2017, respectively. The Debtors seek these extensions to avoid the necessity of having to formulate a chapter 11 plan or plans prematurely and to ensure that their chapter 11 plans best address the interests of the Debtors, their creditors and estates.

**The Debtors' Progress Since the Petition Date**

5.      Folts Home is a New York not-for-profit corporation and the owner of a 163-bed long-term residential health care and rehabilitation facility located at 100-122 North Washington Street, Herkimer, New York 13350 (the "Nursing Home Facility"). In addition to long-term skilled nursing and residential care, Folts Home provides memory care to residents with dementia, palliative care and respite care and operates an adult day care program. Folts Home

also offers rehabilitation services, such as physical, occupational and speech therapy, on both in-patient and out-patient bases.

6. FAH, also known as Folts-Claxton, is a New York not-for-profit corporation and the owner of an 80-bed adult residential center that was constructed in 1998 and is located at 104 North Washington Street, Herkimer, New York 13350 (the "Adult Home Facility", and together with the Nursing Home Facility, the "Facilities"). FAH residents reside in separate apartments and are provided services such as daily meals, laundry, housekeeping and medication assistance.

7. As a result of operating losses in 2011, 2012 and 2013 and the accumulation of significant debt during that period, the Debtors requested that the New York State Department of Health appoint receivers to operate the Facilities. As a result, receivers have operated the Facilities since October 1, 2013. HomeLife has operated the Facilities as receiver since February 14, 2015 and will continue in that capacity during the pendency of the chapter 11 cases.

8. The primary purpose of the Debtors' chapter 11 cases is to implement the sale of the Facilities as going concerns pursuant to section 363 of the Bankruptcy Code, and to address the numerous significant claims that accrued prior to October 1, 2013. The Debtors sought this relief in light of their financial inability to continue operating the Facilities, the fact that they have encountered operating losses since 2011, and their desire to sell the Facilities to a qualified purchaser who will protect the health, safety and welfare of the Folts Home and FAH residents and preserve the Debtors' long-standing mission to provide quality residential healthcare to members of the Herkimer community.

9. On February 16, 2017, the Debtors filed a motion seeking, among other things, the approval of bidding procedures and the authorization to sell substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code.

10. On March 27, 2017 and April 12, 2017, the Court entered orders approving bidding procedures and scheduling an auction sale of the Debtors' assets for June 6, 2017. The hearing to approve the sale of substantially all of the Debtors' assets is scheduled for June 20, 2017.

11. On April 5, 2017, the Court also entered an order authorizing the Debtors to retain CohnReznick Capital Markets Securities , LLC ("CohnReznick") as their investment banker to market the Debtors' assets for sale, effective nunc pro tunc as of the Petition Date. Since the Petition Date, CohnReznick has taken numerous steps to actively market the Debtors' assets for sale as going concerns.

12. The Debtors will continue to work with the U.S. Department of Housing and Urban Development ("HUD"), the New York State Department of Health (the "DOH"), their other prepetition secured creditors and HomeLife on all essential issues relating to the asset sale, and the development of, what will most likely be, a joint disclosure statement and liquidating plan in these cases.

## Applicable Authority

13. Pursuant to section 1121(d) of the Bankruptcy Code, this Court may extend a debtor's exclusive periods upon a demonstration of cause:

> On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d).

14. The principal goal of chapter 11 is the successful reorganization or liquidation of the debtor's business in order to maximize the benefit to creditors. *See NLRB v. Bildisco,* 465 U.S. 513, 527 (1984); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983). The

Congressional intent woven throughout chapter 11 is that the principal means of a successful outcome should be a considered and consensual plan. *In re Perkins*, 71 B.R. 294, 297 (W.D. Tenn. 1987). To promote the formulation of a considered and consensual plan, Congress gave the debtor the exclusive right to propose a plan of reorganization for an initial 120-day period. *See In re Ames Dep't Stores, Inc.*, 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor the flexibility to negotiate with its creditors."). Pursuant to section 1121(d) of the Bankruptcy Code, this initial period of exclusivity can be extended for "cause".

15. Whether "cause" exists to extend a debtor's exclusive periods to file and solicit acceptances of a chapter 11 plan is a decision committed to the sound discretion of the bankruptcy court based upon the facts and circumstances of each particular case. *See In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987). Congress intended to give the bankruptcy court maximum flexibility to make such determination. *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).

16. In determining whether cause exists to extend a debtor's exclusive periods, courts have considered numerous factors, including:

    (i)    the size and complexity of the case;

    (ii)    the need for more time to allow the debtor to negotiate a consensual chapter 11 plan and prepare adequate information;

    (iii)    whether the debtor has made good faith progress toward a chapter 11 plan;

    (iv)    whether the debtor has been paying its debts when due;

    (v)    whether the debtor has demonstrated reasonable prospects for filing a viable chapter 11 plan;

    (vi)    whether the debtor has made progress in negotiating with its creditors;

    (vii)    the length of time the case has been pending;

  (viii) whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's demands; and

  (ix) whether unresolved contingencies that may affect the viability of a chapter 11 plan exist.

*In re Tripodi*, No. 04-30793, 2005 LEXIS 1981, at *4 (Bankr. D. Conn. 2005).

  17. While not all factors are relevant to every case, the courts have used a subset of the above factors to determine whether cause exists, *In re Hoffinger Indus.*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003), and further consider the totality of circumstances of a given case. *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997).

  18. An analysis of the various factors noted above demonstrates that sufficient cause exists for extending the Debtors' Exclusive Periods to October 14, 2017 and December 13, 2017, respectively.

  19. First, the Debtors' cases are complex, and involve, on a consolidated basis, assets valued on the Petition Date at approximately $20 million and liabilities totaling approximately $25 million.

  20. Second, as discussed above, the sale transaction related to substantially all of the Debtors' assets must be completed before the Debtors can formulate and negotiate successful chapter 11 plans and prepare a joint disclosure statement containing adequate information.

  21. Further, the Debtors' demonstrated progress in resolving issues that have arisen since the Petition Date also justifies the requested extension of the Debtors' Exclusive Periods. The Debtors have worked with HUD, the DOH, their other prepetition secured creditors, HomeLife, the Office of the United States Trustee and investment banker CohnReznick on all issues in order to ensure the proper administration of their cases.

  22. In addition, receiver HomeLife, on behalf of the Debtors, have been paying the Debtors' post-petition debts when due. The fact that a debtor has sufficient liquidity to pay its

post-petition debts as they come due supports the granting of an extension of the debtor's exclusive periods, because it suggests that such an extension will not jeopardize the rights of post-petition creditors. The Debtors, through HomeLife, will continue to pay their undisputed post-petition debts as they come due and they anticipate having sufficient liquidity due to the relevant cash collateral orders to do so.

23. The Debtors believe, based on the progress to date and the constructive discussions with their key constituencies, that their prospects for ultimately proposing and filing a viable joint chapter 11 plan are solid, thus warranting an extension of the Debtors' Exclusive Periods.

24. This is the first request for an extension of the Debtors' Exclusive Periods, and it is made only three months after the Petition Date. As such, the Debtors are not yet in positions to accurately evaluate the universe of claims against them, finalize a chapter 11 plan or prepare a disclosure statement containing adequate information. Accordingly, extensions of the Debtors' Exclusive Periods are warranted. Rather than requesting the extensions of the Debtors' Exclusive Periods as a negotiating tactic or as a means of maintaining leverage over any group of creditors whose interests may be harmed by such an extension, the Debtors are requesting the extensions simply to give themselves sufficient time to develop a joint chapter 11 plan that maximizes creditor recoveries. Allowing the Debtors' Exclusive Periods to terminate at this premature point would defeat one of the primary purposes of section 1121 of the Bankruptcy Code, which is the development of a consensual chapter 11 plan. *See Mid-State Raceway, Inc.*, 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005).

25. Finally, the proposed sale transaction supports extensions of the Debtors' Exclusive Periods. *See In re McLean Indus, Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).

Following the sale closing, the Debtors must address a significant number of issues, both large and small, before they can proceed to formulate a joint chapter 11 plan.

26. Based upon the foregoing, the Debtors respectfully submit that ample cause exists under the Bankruptcy Code and the applicable case law for the requested extensions of the Debtors' Exclusive Periods from June 16, 2017 and August 15, 2017, respectively, to October 14, 2017 and December 13, 2017, respectively.

27. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**WHEREFORE**, Debtors Folts Home and Folts Adult Home, Inc. request that the Court enter an Order as follows:

a. granting the Debtors' first request to extend the exclusive periods within which only the Debtors may file a chapter 11 plan or plans until October 14, 2017;

b. granting the Debtors' first request to extend the period within which the Debtors may solicit acceptances of their chapter 11 plan or plans until December 13, 2017; and

c. granting such other and further relief as to the Court may seem just and proper.

Dated: May 2, 2017
Syracuse, New York

BOND, SCHOENECK & KING, PLLC

By: /s/ Camille W. Hill
Stephen A. Donato, Esq., Bar Roll 101522
Camille W. Hill, Esq.; Bar Roll 501876
*Attorneys for the Debtors*
One Lincoln Center, 18th Floor
Syracuse, New York 13202
Telephone: (315) 218-8000
sdonato@bsk.com and chill@bsk.com

2898508.1