<br>

Hearing Date: June 20, 2017
Time: 9:30 a.m.
Hearing Location: Utica, New York
Objection Deadline: June 13, 2017

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In re:

    FOLTS HOME, *et al.*,[1]

                   Debtors.

Case No. 17-60139
Chapter 11 Case (Main Case)
Case No. 17-60140
Jointly Administered

---

### MOTION FOR ENTRY OF AN ORDER DIRECTING TURNOVER OF PROPERTY OF THE DEBTORS' ESTATES

Debtors Folts Home and Folts Adult Home, Inc. ("FAH") (collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court (this "Motion") for entry of an order, pursuant to 11 U.S.C. §§ 105(a), 542(a) and 543(b), directing the Clerk of the United States District Court for the Northern District of New York (the "District Court Clerk") to turn over the Surplus Funds (as defined below) to the Debtors. In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Folts Home (2183) and Folts Adult Home, Inc. (7237).

2917015.3

4. The statutory basis for the relief requested herein is 11 U.S.C. §§ 105(a), 542 and 543.

## BACKGROUND

5. On February 16, 2017 (the "Petition Date"), the Debtors filed separate, voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of New York (the "Court"), commencing the Debtors' chapter 11 cases (the "Chapter 11 Cases"). The Debtors' skilled nursing home and adult residence are currently operated by duly-appointed receivers HomeLife at Folts, LLC and HomeLife at FoltsClaxton, LLC (collectively, "HomeLife"), respectively. No request for a trustee or examiner has been made in these Chapter 11 Cases and, as of the date of the filing of this Motion, no official committees have been appointed or designated. The Debtors' cases are being jointly administered pursuant to an Order of Joint Administration entered by the Court on February 16, 2017.

6. Folts Home is a New York not-for-profit corporation and the owner of a 163-bed long-term residential health care and rehabilitation facility located at 100-122 North Washington Street, Herkimer, New York 13350 (the "Nursing Home Facility"). In addition to long-term skilled nursing and residential care, Folts Home provides memory care to residents with dementia, palliative care and respite care and operates an adult day care program. Folts Home also offers rehabilitation services, such as physical, occupational and speech therapy, on both in-patient and out-patient bases.

7. FAH, also known as Folts-Claxton, is a New York not-for-profit corporation and the owner of an 80-bed adult residential center that was constructed in 1998 and is located at 104 North Washington Street, Herkimer, New York 13350 (the "Adult Home Facility", and together

with the Nursing Home Facility, the "Facilities"). FAH residents reside in separate apartments and are provided services such as daily meals, laundry, housekeeping and medication assistance.

8. From October 1, 2013 through February 13, 2015, FRNC, LLC ("FRNC") and FCADH, LLC ("FCADH") (collectively, the "Former Receivers") were the receivers and operators of debtors Folts Home and FAH, respectively. The Former Receivers operated the Debtors in accordance with the terms of Receivership Agreements executed by the Debtors, the Former Receivers and the NYS Department of Health (the "DOH") dated October 1, 2013 (the "Receivership Agreements"). Copies of the FRNC Receivership Agreement and the FCADH Receivership Agreement are attached hereto as Exhibits "A" and "B", respectively[2].

9. Section 1.7 of the FRNC Receivership Agreement provides that,

> . . . the Receiver shall hold the assets of the Home in trust for the Home and shall take no action which will result in the diminution of the assets entrusted to it by the Home. The Receiver shall not be responsible for any and all payables, liabilities or obligations of any kind incurred before the inception of the receivership or arising out of the operation of the Home prior to the inception of the receivership all of which shall remain the sole responsibility of the Home.

Section 2.5 of the FAH Receivership Agreement contains similar language.

10. In accordance with the terms of the Receivership Agreements, the Former Receivers did not pay any of the pre-receivership liabilities or taxes incurred by Folts Home or FAH. After paying all of the outstanding obligations incurred during the term of their receiverships, FRNC held surplus funds totaling $734,711.58 on behalf of Folts Home and FCADH held surplus funds totaling $26,586.03 on behalf of FAH (collectively, the "Surplus Funds"). All of the Surplus Funds were accrued solely during the Former Receivers' receivership term.

---

[2] The Debtors are currently operated by receiver HomeLife pursuant to separate Receivership Agreements dated as of November 1, 2014. The HomeLife receiverships commenced on February 14, 2015.

11. Under the Receivership Agreements, the Surplus Funds were held in trust for the Debtors by the Former Receivers and were property of the Debtors, to be returned to the Debtors at the conclusion of the receiverships. Unfortunately, at that time, several parties asserted claims to the Surplus Funds, to wit: the new receiver, HomeLife, sought to use the Surplus Funds as operating funds; the IRS sought to recover the Surplus Funds in order to satisfy the pre-receivership Tax Liens; the former mortgagee, Greystone Funding Corporation ("Greystone")[3] asserted a first position security interest in and lien upon the Surplus Funds; and certain judgment creditors sought to execute on Folts Home bank accounts and cash in order to satisfy their judgment claims.

12. Out of an abundance of caution and in order to resolve these competing claims, on July 1, 2015, FRNC commenced a pre-petition interpleader action in the United States District Court for the Northern District of New York titled *FRNC, LLC v. HomeLife at Folts, LLC et al.*, Case No. 6:15-cv-812 (the "Interpleader Action") and named debtor Folts Home, HomeLife, the IRS, HUD, the New York Department of Taxation and Finance, the New York Department of Labor, Greystone and several Folts Home judgment creditors as defendants (collectively, the "Interpleader Defendants"). The complaint in the Interpleader Action was later amended to include FCADH as a plaintiff and FAH as an Interpleader Defendant.

13. The Former Receivers thereafter deposited the Surplus Funds with the District Court Clerk. On May 18, 2017, the Debtors were advised that the Former Receivers have identified additional Surplus Funds in the amount of $141,262.45 for Folts Home and $6,457.00 for FAH, so that the Folts Home Surplus Funds will total $875,974.03 and the FAH Surplus Funds will total $33,043.03 once the additional funds are deposited with the District Court.

---

[3] The United States Department of Housing and Urban Development ("HUD") was substituted as the mortgagee of the Debtors' real properties during October 2016.

14. A Notice of Bankruptcy Filing was filed with the District Court on February 21, 2017 [Interpl. Dkt. No. 118]. Senior Judge Gary L. Sharpe subsequently stayed the Interpleader Action as to the Debtors on February 22, 2017 [Interpl. Dkt. No. 119].

15. The primary purpose of the Debtors' bankruptcy filings is to seek to pay the Debtors' creditors through a sale of their assets to a qualified purchaser who will continue the Debtors' mission of providing skilled nursing care and adult residential care to the Herkimer community. To that end, the Debtors have retained investment banker CohnReznick Capital Markets Securities, LLC, which is actively marketing the assets. An auction sale of the assets is scheduled for June 6, 2017 and the hearing to approve the sale of the assets is scheduled for June 20, 2017.

16. HUD holds first priority mortgage liens covering the Facilities and real property and first position security interests in the Debtors' personal property assets and will receive a significant portion of the asset sale proceeds. In addition, prior to the commencement of its receivership in October 2013, Folts Home incurred numerous unpaid liabilities to vendors and governmental authorities, including withholding tax liabilities due the United States Internal Revenue Service (the "IRS") for the period starting with the fourth quarter of 2011 through the fourth quarter of 2013. The IRS filed six Notices of Tax Lien (collectively, the "Tax Liens") during 2013 and 2014 asserting claims against Folts Home, as follows:

| **Tax Lien Filing Date** | **Tax Period** | **Amount of Lien** |
|---|---|---|
| 2/11/2013 | 6/30/2012 | $323,323.50 |
| 3/13/2013 | 9/30/2012 | $320,384.16 |
| 5/31/2013 | 12/31/2011 | $ 15,100.00 |
| 6/10/2013 | 12/31/2012 | $  4,271.48 |
| 3/31/2014 | 3/31/2013 & 6/30/2013 | $ 11,430.80 |
| 6/3/2014 | 9/30/2013 & 12/31/2013 | $ 55,666.35 |
| Total: | | $730,176.29 |

2917015.3

17. On March 20, 2017, the IRS filed Proof of Claim No. 11 in the Debtors' cases asserting a secured claim against Folts Home in the amount of $506,581.55 for unpaid pre-petition taxes, $121,804.60 for accrued interest and $295,516.69 for penalties, for a total claim of $923,902.84. FAH does not owe the IRS any money and the IRS has not filed a claim against FAH. The Interpleader Defendants and several other creditors also assert liens and claims against the Debtors' assets.

18. On April 26, 2017, the United States of America ("USA")[4] filed a motion (the "USA Motion") pursuant to 11 U.S.C. § 362(d), Rule 4001 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 4000-1 seeking to modify the automatic stay in the Debtors' cases in order to allow for the continuation of the Interpleader Action. The Debtors filed a Response in opposition to the USA Motion, and following oral argument on May 23, 2017, the Court adjourned the USA motion until June 20, 2017.

## RELIEF REQUESTED

19. The Debtors respectfully request that, in the event that the Court denies the USA Motion, the Court enter an order, pursuant to 11 U.S.C. §§ 542(a) or 543(b), directing the District Court Clerk to turn over the Surplus Funds to the Debtors to be held in escrow pending the entry of a further order by this Court.[5]

---

[4] The movant is identified as the "United States of America" and no specific agency or department thereof is designated. The Motion, however, is signed by an attorney from the Tax Division of the United States Department of Justice, and the stay relief requested seeks to address the priority of the pre-petition Tax Liens filed by the Internal Revenue Service against the Surplus Funds.

[5] Although Federal Rule of Bankruptcy Procedure 7001(1) states that an adversary proceeding is required for "a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee", courts have granted such relief by motion instead. For example, in *In re Cypress Health Systems Florida, Inc.*, the Bankruptcy Court determined that a $50,000 escrow fund held by a title company was property of the debtor's estate and ordered it to be turned over on the debtor in possession's motion. *In re Cypress Health Systems Florida, Inc.*, 536 B.R. 334 (Bankr. N.D. Fla. 2015).

**BASIS FOR RELIEF REQUESTED**

20. Section 542(a) of the Bankruptcy Code generally requires a noncustodial entity that has possession of property of the estate to deliver the property or the value thereof to a trustee or debtor-in-possession. 11 U.S.C. § 542(a). Section 543(b) of the Bankruptcy Code similarly requires a custodian with knowledge of the bankruptcy case to deliver such property and any proceeds thereof to a trustee or debtor-in-possession. 11 U.S.C. § 543(b).

21. "[T]he turnover provisions of the Bankruptcy Code are to be self-effectuating, subjecting to sanctions a party that willfully fails to comply." *In re Cinevision International, Inc.*, 2016 WL 638729, *5 (B.A.P. 9th Cir. 2016) (internal citations omitted). "A party who does not seek the bankruptcy courts guidance, and unilaterally decides that it does need not turn over the property, does so at the risk that it will be assessed damages or will be sanctioned for violating the automatic stay." *Id*.

A. *The Surplus Funds are Property of the Debtors' Estates Pursuant to 11 U.S.C § 541*.

22. Section 541(a) of the Bankruptcy Code provides that a debtor's estate is comprised of all legal and equitable interests of the debtor in property as of the commencement of the case, wherever located and by whomever held. 11 U.S.C. § 541(a)(1).

23. The Surplus Funds aggregating approximately $909,017.06 are significant assets in the Debtors' estates. Under the Receivership Agreements, the Surplus Funds were held in trust for the Debtors by the Former Receivers and are property of the Debtors, to be returned to the Debtors at the conclusion of the receiverships.

24. Funds held by a neutral stakeholder subject to competing claims, like the Surplus Funds held by the District Court Clerk, are property of a debtor's estate. *See, In re Great Western Coal, Inc.*, 146 B.R. 702, 706 (Bankr. S.D. Tex. 1992); *Georgia Pacific Corp. v. Sigma*

*Service Corp.*, 712 F.2d 962, 967-68 (5th Cir. 1983) (where the debtor has a legal interest in property subject to the claim of a third party, it is the bankruptcy court's role to determine the dispute after ordering appropriate procedures to protect the claimant's potential interest).

25.     In *In re Ne. Dairy Coop. Fed'n, Inc.*, 72 B.R. 663 (Bankr. N.D.N.Y. 1987), Judge Stephen G. Gerling held that the Bankruptcy Court had jurisdiction over certain funds that were the subject of an interpleader action in the United States District Court for the Southern District of New York.  In making such determination, Judge Gerling stated the following:

> [A] broad range of property [is] to be included in the [debtor's] estate . . . The only purpose of the interpleader action was to determine the ownership of the funds, for the plaintiff therein made no claim to the money and did not dispute its legal obligation to pay. Therefore, the interpleader court's only function was the same as that which is vested in the bankruptcy court under the Bankruptcy Code, that is, to determine the relative priority of competing claims to the fund.

*In re Ne. Dairy Coop. Fed'n, Inc.*, 72 B.R. 663, 674 (Bankr. N.D.N.Y. 1987) (internal citations omitted).

26.     The Surplus Funds, therefore, are property of the Debtors' estates under § 541(a) of the Bankruptcy Code and are subject to the jurisdiction of this Court.

B. *The District Court Clerk is a Custodian for Purposes of 11 U.S.C § 543*.

27.     Section 543(b) of the Bankruptcy Code provides that:

> A custodian shall— (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and (2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

11 U.S.C. § 543(b).

28. Section 101(11) of the Bankruptcy Code defines a custodian as:

> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title; (B) assignee under a general assignment for the benefit of the debtor's creditors; or (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C § 101(11).

29. The Debtors respectfully submit that the District Court Clerk is a custodian pursuant to 11 U.S.C. § 101(11) because (1) the Surplus Funds stem from a receivership, and (2) the District Court Clerk was authorized by a court order to "take charge of" the Surplus Funds pending the outcome of the Interpleader Action. *See, In re Mt. Claire, Inc.*, 131 B.R. 231 (Bankr. S.D. Fla. 1991) (analyzing section 543 of the Bankruptcy Code for funds deposited with the Clerk of the Court for the County Court of Broward County).

30. Moreover, the District Court Clerk had knowledge of these Chapter 11 Cases, as required by 11 U.S.C. § 543(b)(1) because a Notice of Bankruptcy Filing was filed with the District Court on February 21, 2017 [Interpl. Dkt. No. 118] and Senior Judge Gary L. Sharpe subsequently stayed the Interpleader Action as to the Debtors [Interpl. Dkt. No. 119].

31. Here, the reasoning of *NLT Computer Services v. Capital Computer Services*, 755 F.2d 1253 (6th Cir. 1985), a Bankruptcy Act case, is instructive. In that case, NLT owed Capital $150,000 on a computer contract, and NLT admitted the payments were due and was willing to honor its obligations. However, several creditors of Capital claimed a right to the $150,000, including the United States who, similar to the instant case, claimed that the monies due were

subject to a recorded notice of tax levy. Accordingly, NLT filed an interpleader action and deposited the $150,000 into the registry of the state court.

32. Before a determination was made by the state court, some of Capital's creditors filed an involuntary bankruptcy petition against Capital, and asserted that 11 U.S.C § 362 stayed the interpleader action. Yet, the district court determined that the automatic stay did not apply and that the United States' claim was entitled to priority under an insolvency statute.

33. Ultimately, the United States Court of Appeals for the Sixth Circuit reversed the district court decision, holding that the automatic stay precluded the creditors from pursuing the state court action. The Sixth Circuit reasoned that because the Bankruptcy Code is specifically designed to resolve such disputes amongst creditors regarding priority and distributions of assets, the Bankruptcy Code should control the issue. In so holding, the Sixth Circuit stated the following:

> ". . . once bankruptcy had intervened, the clerk of the court had a duty as custodian to deliver those funds as property of the debtor to the trustee in bankruptcy for disposition. We believe that the custodian would be so obligated unless the government had actually acquired ownership of the funds prior to the filing of the proceedings in bankruptcy."

*NLT Computer Services v. Capital Computer Services*, 755 F.2d 1253 (6th Cir. 1985).

34. As discussed in *NLT Computer Services*, the District Court Clerk here should be directed to turn over the Surplus Funds in accordance with Section 543(b) of the Bankruptcy Code.

35. However, if the Court finds that the District Court Clerk is not a custodian and that section 543(b) of the Bankruptcy Code is not applicable, the Debtors respectfully submit that turnover of the Surplus Funds may be similarly directed under Section 542(a) of the Bankruptcy Code, which provides that:

2917015.3

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

36. Based on the foregoing, the Debtors respectfully request that this Court enter and order directing the District Court Clerk to turn over the Surplus Funds to the Debtors' estates pursuant to sections 542(a) and 543(b) of the Bankruptcy Code.

C. *The Interpleader Action may be Referred to this Court pursuant to 11 U.S.C. § 157(a).*

37. In the event that this Court denies the Debtors' request for turnover of the Surplus Funds under Sections 542 and 543 of the Bankruptcy Code, the Debtors intend to file a motion with the District Court requesting that the Interpleader Action be referred to the Bankruptcy Court under 28 U.S.C. § 157(a). Section 157(a) provides that, "[e]ach district court may provide that . . . any or all proceedings . . . related to a case under title 11 shall be referred to the bankruptcy judges for the district." Although this statute is ordinarily used to assign bankruptcy cases, it also authorizes a district court to transfer *any* pending district court case to a bankruptcy judge if there is some reason why it would make sense to have a bankruptcy judge handle the case. *See, In re Mitchell*, 206 B.R. 204 (Bankr. C.D. Cal. 1997); *see also, Thomas Steel Corp. v. Bethlehem Rebar Industries, Inc.* 101 B.R. 16 (Bankr. N.D. Ill. 1989) (proper method to transfer district court action to bankruptcy court is motion before district court for directed reference, not removal).

38. A bankruptcy court has subject matter jurisdiction over actions that are related to a pending bankruptcy. *Specialty Mill, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir.

2917015.3

1995). The test for determining whether a civil proceeding is related to bankruptcy is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy . . . An action is related to bankruptcy if the outcome could alter the debtor's right, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.*

39. In this case, the treatment and distribution of the Surplus Funds is a significant issue affecting the Debtors' estates. Whether the IRS is entitled to recover all of the Surplus Funds, or a portion of those Funds, is a matter most properly decided by this Court. The return of the Surplus Funds to the Debtors' estates and the referral and continuation of the Interpleader Action to this Court as an adversary proceeding, is preferable to continued litigation in the District Court in order to ensure an orderly liquidation of the Debtors' assets.

40. Moreover, if the Interpleader Action is referred to this Court, the Surplus Funds will likely no longer be allowed to be deposited with the District Court. Accordingly, the Surplus Funds should be turned over to the Debtors to be held in escrow pending further order of this Court.

41. The Debtors respectfully submit that the relief requested herein is in the best interest of the Debtors, their estates, the residents and other parties in interest, and will foster the efficient and economic administration of these Chapter 11 Cases.

## **NOTICE**

42. Notice of this Motion will be given to (i) the Clerk of the United States District Court for the Northern District of New York, (ii) all parties to the Interpleader Action, (iii) the Office of the United States Trustee for the Northern District of New York, (iv) counsel for HomeLife; (v) counsel for HUD and the IRS; (vi) counsel for the DOH; (vii) the Debtors' twenty

(20) largest unsecured creditors as set forth in the consolidated list filed with the Debtors' petitions, (viii) all required governmental agencies, and (ix) all parties filing Notices of Appearance and request for notice. In light of the nature of the relief requested herein, the Debtors submit that no further notice is required.

43. No prior application for the relief requested herein has been made to this or any other Court.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order directing the District Court Clerk to turn over the Surplus Funds to the Debtors and granting such other relief as the Court deems just and proper.

Dated: May 30, 2017
       Syracuse, New York

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

By:    /s/  Camille W. Hill
Stephen A. Donato, Esq. (Bar Roll #101522)
Camille W. Hill, Esq. (Bar Roll #501876)
Sarah M. Harvey, Esq. (Bar Roll #519993)
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202
Tel:  (315) 218-8000
Fax:  (315) 218-8100
Email: sdonato@bsk.com
       chill@bsk.com
       sharvey@bsk.com

*Attorneys for debtors Folts Home and Folts Adult Home, Inc.*