**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**FRNC, LLC et al.,**

                          **Plaintiffs,**

                        **v.**

**HOMELIFE AT FOLTS, LLC et al.,**

                         **Defendants.**
_____

**6:15-cv-812**
**(GLS/TWD)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| Hinman, Howard Law Firm | AMY SHAPIRO, ESQ. |
| P.O. Box 5250 | HARVEY D. MERVIS, ESQ. |
| 80 Exchange Street | |
| 700 Security Mutual Building | |
| Binghamton, NY 13902 | |
| | |
| **FOR THE DEFENDANTS:** | |
| *HomeLife at Folts, LLC* and | |
| *HomeLife at Folts-Claxton, LLC* | |
| Koch & Schmidt, LLC | FREDERICK EVANS SCHMIDT, |
| 650 Poydras Street, Suite 2660 | ESQ. |
| New Orleans, LA 70130 | |
| | |
| *Folts Home* and *Folts, Inc.* | |
| Koch & Schmidt, LLC | FREDERICK EVANS SCHMIDT, |
| 650 Poydras Street, Suite 2660 | ESQ. |
| New Orleans, LA 70130 | |
| | |
| Bond Schoeneck & King, PLLC | SARAH M. HARVEY, ESQ. |
| One Lincoln Center | STEPHEN A. DONATO, ESQ. |
| Syracuse, NY 13202 | CAMILLE WOLNIK HILL, ESQ. |

| | |
|---|---|
| Menter, Rudin Law Firm<br>308 Maltbie Street<br>Suite 200<br>Syracuse, NY 13204 | MITCHELL J. KATZ, ESQ.<br>MICHAEL J. BALESTRA, ESQ. |
| *Folts Adult Home, Inc.*<br>Bond Schoeneck & King, PLLC<br>One Lincoln Center<br>Syracuse, NY 13202 | SARAH M. HARVEY, ESQ.<br>STEPHEN A. DONATO, ESQ.<br>CAMILLE WOLNIK HILL, ESQ. |
| Menter, Rudin Law Firm<br>308 Maltbie Street<br>Suite 200<br>Syracuse, NY 13204 | MITCHELL J. KATZ, ESQ.<br>MICHAEL J. BALESTRA, ESQ. |
| *United States of America Department of Treasury-Internal Revenue Service* and *United States of America Department of Housing and Urban Development*<br>U.S. Department of Justice<br>Tax Division<br>P.O. Box 55<br>Ben Franklin Station<br>Washington, DC 20044 | JAMES YU, ESQ. |
| HON. GRANT C. JAQUITH<br>United States Attorney<br>P.O. Box 7198<br>100 South Clinton Street<br>Syracuse, NY 13261 | MICHAEL D. GADARIAN, ESQ.<br>Assistant U.S. Attorney |
| *State of New York Department of Taxation and Finance*, *State of New York Department of Health*, *State of New York Department of Labor*, and *Workers Compensation Board of the State of New York*<br>Office of Attorney General | JOHN F. MOORE, ESQ. |

State of New York
The Capitol
Albany, NY 12224

*Niagara Mohawk Power Corporation*
doing business as *National Grid*
Barclay Damon LLP                           ROBERT B. LIDDELL, ESQ.
Barclay Damon Tower
125 East Jefferson Street
Syracuse, NY 13202

*Mountainside Medical Equipment, Inc.*
Cohen, Cohen Law Firm                       DANIEL S. COHEN, ESQ.
258 Genesee Street
Suite 505
Utica, NY 13502

*Wesco Insurance Company* and
*Rochdale Insurance Company*
Meggesto, Crossett Law Firm                 GARY J. VALERINO, ESQ.
313 East Willow Street
Suite 201
Syracuse, NY 13203

*Chem Rx Pharmacy Services, LLC*
Rivkin Radler LLP                           JOHN F. QUEENAN, ESQ.
9 Thurlow Terrace
Albany, NY 12203

Fultz Maddox Dickens PLC                    MATTHEW C. WILLIAMS, ESQ.
101 S. Fifth Street, 27th Floor
Louisville, KY 40202

*Greystone Servicing Corporation, Inc.*
Schiller, Knapp Law Firm                    GARY A. LEFKOWITZ, ESQ.
950 New Loudon Road
Latham, NY 12110

**Gary L. Sharpe**

**Senior District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff FRNC, LLC, later joined by FCADH, LLC,[1] commenced this interpleader action against numerous defendants, to determine the proper distribution of certain money. (*See generally* Compl., Dkt. No. 1.[2]) Pending is a motion for directed reference to the United States Bankruptcy Court for the Northern District of New York, Utica Division (Bankruptcy Court) filed by defendants Folts Home (Folts) and Folts Adult Home, Inc. (FAH) (collectively, "Debtors"). (Dkt. No. 131.) Defendant United States of America[3] opposed the motion. (Dkt. No. 134.) For the reasons that follow, Debtors' motion is granted.

## II. Background[4]

---

[1] Dkt. No. 92 at 2.

[2] Although the complaint was later amended, (Am. Compl., Dkt. No. 56), the amendment simply dismissed one defendant and added another to account for the fact that an incorrect entity of one claimant had been named as a defendant, (Dkt. No. 48 at 1; Dkt. Nos. 54-56). That is, nothing of substance in the complaint changed.

[3] Both the United States of America Department of Treasury, Internal Revenue Service and the United States of America Department of Housing and Urban Development were named as defendants. (Am. Compl. ¶¶ 5-6.) The response to the instant motion was filed by the United States of America, (Dkt. No. 134 at 1), so the court refers to both United States defendants collectively.

[4] The facts are largely drawn from Debtors' affidavit and attached documents. (Dkt. No. 131, Attachs. 1-3.) The United States did not submit an affidavit, and indeed it repeatedly

Folts and FAH are not-for-profit corporations; the former owns a nursing home facility, and the latter owns an adult home facility (collectively, "Facilities"), both of which are located in Herkimer, New York. (Dkt. No. 131, Attach. 1 ¶¶ 3-4.) Sometime before October 2013, each corporation experienced financial difficulties and sought appointment of a receiver in conjunction with the New York State Department of Health. (Dkt. No. 8 ¶ 22;[5] Dkt. No. 92 at 1-2.) From October 2013 until February 2015, FRNC and FCADH were the receivers of Folts and FAH, respectively, pursuant to executed agreements. (Dkt. No. 131, Attach. 1 ¶ 5; Attachs. 2, 3.) As receivers, FRNC and FCADH took over complete responsibility for operating the Facilities, including billing and collection of accounts receivable. (Am. Compl. ¶ 23; Dkt. No. 8 ¶ 23; Dkt. No. 92 at 1-2.)

In operating the Facilities, FRNC accrued over $700,000 in surplus funds on behalf of Folts, and FCADH accrued over $26,000 in surplus funds on behalf of FAH (collectively, "Funds"). (Dkt. No. 131, Attach. 1

---

cited Debtors' affidavit in the fact section of its response. (Dkt. No. 134 at 2-3.) In any event, the facts and procedural history are not at issue.

[5] Although an amended complaint was later filed, *see supra* note 2, in the text minute entry dated October 2, 2015, answers to the complaint already filed by defendants were deemed responsive to the amended complaint.

5

¶ 7.)  The Funds, held in trust for Debtors by FRNC and FAH, were to be returned at the conclusion of the receiverships.  (*Id.* at ¶ 8.)  However, at the end of the receiverships in February 2015, several parties asserted claims to the Funds, including the United States.  (*Id.*; Dkt. No. 134 at 2.)  To resolve the competing claims to the Funds, FRNC commenced the instant interpleader action in July 2015, and FCADH was later added as a plaintiff.[6]  (*See generally* Compl.; Am. Compl.)  By stipulation, the Funds were paid into the registry of the court.  (Dkt. Nos. 61, 80, 96.)

In February 2017, Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code[7] with the Bankruptcy Court.[8]  (Dkt. No. 131, Attach. 1 ¶¶ 11-12.)  In June 2017, Debtors conducted an auction sale of their assets, and the next month the Bankruptcy Court entered an order approving the sale to Cedarcare Holdings, LLC.[9]  (*Id.* ¶¶ 13-14.)  The approval process through the New York State Department

---

[6] Dkt. No. 92 at 2.

[7] *See* 11 U.S.C. §§ 101-1532 (Title 11); 11 U.S.C. §§ 1101-74 (Chapter 11 of Title 11).

[8] Technically, Debtors filed separate, voluntary petitions for relief.  (Dkt. No. 131, Attach. 1 ¶ 11.)  But the Bankruptcy Court cases are being jointly administered pursuant to an order of joint administration.  (*Id.* ¶ 12; Bankr. Pet. Nos. 17-60139-6-dd, 17-60140-6-dd.)

[9] Debtors continue to operate the Facilities through duly-appointed substitute receivers. (Dkt. No. 131, Attach. 1 ¶ 12.)

of Health—after which the sale closing is to occur—is ongoing. (Dkt. No. 144.)

As a result of the bankruptcy petitions, the instant action was stayed as to Debtors. (Dkt. No. 119.) In April 2017, the United States filed a motion for relief from the automatic stay in the Bankruptcy Court. (Dkt. No. 134 at 2.) While that motion was pending, on July 24, 2017, Debtors filed, in this court, the pending motion for directed reference. (Dkt. No. 131.)[10] The United States filed its response on August 21. (Dkt. No. 134.) On September 19, the Bankruptcy Court held a hearing on the United States' motion for relief from the automatic stay and subsequently issued an order extending the stay and adjourning a final hearing until thirty days after this court issues a ruling on the pending motion. (Dkt. No. 139 at 1-2, Attach. 1.) Thereafter, the United States filed a supplemental memorandum of law opposing the pending motion, (Dkt. No. 139), after its motion seeking leave to do so was granted, (Dkt. Nos. 137, 138). Debtors then filed their reply. (Dkt. No. 140.)

### III. <u>Discussion</u>

---

[10] Debtors requested oral argument, (Dkt. No. 131, Attach. 4 at 1), but it is squarely within the court's discretion not to avail itself of oral argument. *See Katz v. Morgenthau*, 892 F.2d 20, 22 (2d Cir. 1989); N.D.N.Y. L.R. 7.1(h).

Case 17-60139-6-dd    Doc 359    Filed 03/15/18    Entered 03/22/18 16:30:45    Desc Main
Document      Page 8 of 13
Case 6:15-cv-00812-GLS-TWD   Document 146   Filed 03/15/18   Page 8 of 13

"[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under [T]itle 11, or arising in or related to cases under [T]itle 11." 28 U.S.C. § 1334(b). "Each district court may provide that any or all cases under [T]itle 11 and any or all proceedings arising under [T]itle 11 or arising in or related to a case under [T]itle 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Accordingly, the Local Rules of Practice for this district state that "[a]ll cases under Title 11 . . . and all proceedings arising under Title 11, or arising in, or related to, a case under Title 11, are referred to the bankruptcy court of this [d]istrict pursuant to 28 U.S.C. § 157." N.D.N.Y. L.R. 76.1. Thus, the question here is whether the interpleader action before this court is "related to" Debtors' bankruptcy; if it is, it is referred to the Bankruptcy Court.

In the Second Circuit, "related to" jurisdiction exists if a "litigation['s] . . . outcome might have any 'conceivable effect' on the bankrupt estate." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992). "[T]he bankruptcy estate encompasses 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 88 (2d Cir. 2014) (quoting 11 U.S.C.

8

§ 541(a)(1)). "Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of [the bankruptcy estate]." *Id.* (internal quotation marks and citation omitted). "While related to jurisdiction is not limitless, . . . it is fairly capacious, and includes suits between third parties which have an effect on the bankruptcy estate." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 340 (2d Cir. 2018) (internal quotation marks and citation omitted). "[C]ontingent outcomes can satisfy the conceivable effects test, so long as there is the *possibility* of an effect on the estate." *Id.* at 340 (internal quotation marks and citation omitted).

Here, "related to" jurisdiction exists because the instant interpleader action might have a conceivable effect on Debtors' estates. *See In re Cuyahoga Equip. Corp.*, 980 F.2d at 114. Under the receivership agreements, the Funds were held in trust for Debtors by FRNC and FCADH and were to be returned to Debtors at the conclusion of the receiverships. (Dkt. No. 131, Attach. 1 ¶ 6; Attach. 2 at 5; Attach. 3 at 8.)[11]

---

[11] The United States' argument that contractual receivers cannot be given powers pursuant to N.Y. Pub. Health Law § 2810(2) is rejected. (Dkt. No. 139 at 10-11.) The United States gives no authority for the proposition that parties cannot contract to give such powers. (*Id.* at 11.) As Debtors point out, the receivership agreements contain specific references to the relevant statutes providing for such powers. (Dkt. No. 140 at 4-5.) And, in any event, even if the United States was correct, "related to" jurisdiction would still exist. *See infra*.

For the reasons argued by Debtors, (Dkt. No. 140 at 4-7), the Funds are property of their estates. As the instant interpleader action was brought to resolve competing claims to the Funds, (*see generally* Am. Compl.), the outcome of this litigation clearly has a conceivable effect on Debtors' estates, *see In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d at 88. And "the Bankruptcy Court [is] the appropriate forum for resolution of an interpleader action involving a debtor as a named defendant, wherein the res [i]s allegedly property of the estate." *In re Ne. Dairy Coop. Fed'n, Inc.*, 72 B.R. 663, 674 (Bankr. N.D.N.Y. 1987), *adopted by* 76 B.R. 910 (N.D.N.Y. 1987) (citing *NLT Comput. Servs. Corp. v. Capital Comput. Sys., Inc.*, 755 F.2d 1253 (6th Cir. 1985)).

The United States argues that "only . . . [D]ebtor[s]'[] claimed *interest* in the [Funds] is the property of the[ir] estate[s]." (Dkt. No. 139 at 5.) Even if true, as part of Debtors' estates, such an interest is sufficient to confer jurisdiction. *See In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d at 88; 11 U.S.C. § 541(a)(1). And the United States' admission that "the [Debtors] could, theoretically, be the rightful owners because the [c]ourt has yet to determine ownership of the Funds," (Dkt. No. 139 at 9-10), is an

10

admission that "related to" jurisdiction exists.  *See SPV Osus Ltd.*, 882 F.3d at 340.[12]

The United States' predictions as to what the Bankruptcy Court might do and conjecture as to that Court's motives are unavailing.  (Dkt. No. 139 at 2-3.)  Its argument that the distribution of the Funds will be the same whether the instant action is referred or not, (*id.* at 3-4, 11-19), is also unavailing.  That is not the test for whether "related to" jurisdiction exists.[13]  Moreover, as Debtors point out, if they are required to await the conclusion of the instant action, the resulting delay could result in more attorneys' fees and quarterly fees incurred by their estates as well as deficiency claims, (Dkt. No. 140 at 3-4), which the United States' convoluted hypotheticals fail to consider, (Dkt. No. 139 at 11-19); *see SPV Osus Ltd.*, 882 F.3d at 340.

Much of the United States' supplemental response relies on *Avant Petroleum, Inc. v. Banque Paribas, BP*, 853 F.2d 140 (2d Cir. 1988).  (Dkt.

---

[12] Moreover, in its initial response, the United States agreed that "this [c]ourt does have the authority to refer the case to the Bankruptcy Court."  (Dkt. No. 134 at 3.)  And it also agreed that "the Funds are personal property of the [Debtors]."  (*Id.* at 7.)  The court fully considered the United States' supplemental response, (Dkt. No. 139), and is not holding the United States to its initial response.  Nonetheless, it bears mentioning that the United States' arguments shifted drastically in light of the Bankruptcy Court's ruling on its motion for relief from the automatic stay, and much of its supplemental response has little to do with any new, material information.  (*See generally* Dkt. No. 139.)

[13] As explained above, the test is whether there is a "conceivable effect."  *In re Cuyahoga Equip. Corp.*, 980 F.2d at 114.  The United States' focus on the "practical effect" is misguided.  (Dkt. No. 139 at 11-12, 14.)

11

No. 139 at 4, 5-6, 8, 9, 17, 18.)  But in that case the issue was whether the failure of a secured creditor to file continuation statements after the initiation of an interpleader action would result in the subordination of its interests.  *See Avant*, 853 F.2d at 140-45.  There is nothing in *Avant* concerning a motion for directed reference or "related to" jurisdiction.  Indeed, bankruptcy is barely mentioned and only in cursory fashion by way of an analogy that is inapposite here.  *Id.* at 143, 144.[14]  The United States' strained arguments smack of an attempt to build a Rube Goldberg machine.  There is nothing in its arguments to rebut Debtors' showing of "related to" jurisdiction.[15]

## IV.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Debtors' motion for directed reference to the United States Bankruptcy Court for the Northern District of New York, Utica Division (Dkt. No. 131) is **GRANTED**; and it is further

---

[14] To the extent that *Avant* is apposite (an extent the court believes to be limited, at best), the court agrees with Debtors' reading of the case.  (Dkt. No. 140 at 7.)

[15] The United States' argument that, if the pending motion is granted, the Bankruptcy Court would have to submit proposed findings of fact and law to this court is a non sequitur.  (Dkt. No. 139 at 11 n.9.)  Likewise, its contention that a future decision by the Bankruptcy Court will be open to challenge on jurisdictional grounds is unpersuasive.  (*Id.* at 19.)

**ORDERED** that this case is hereby referred to the United States Bankruptcy Court for the Northern District of New York, Utica Division; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 15, 2018
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge