UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:                                                              Case No. 17-60139
                                                                    (Main Case)
    FOLTS HOME, *et al.*,[1]                            Case No. 17-60140
                                                                    Chapter 11 Case
                              Debtors.
                                                                    Jointly Administered

## CHAPTER 11 PLAN OF LIQUIDATION FOR FOLTS HOME

                                                   **BOND, SCHOENECK & KING, PLLC**
                                                   Stephen A. Donato, Esq.
                                                   Camille W. Hill, Esq.
                                                   One Lincoln Center
                                                   Syracuse, New York 13202
                                                   Tel: (315) 218-8000
                                                   Fax: (315) 218-8100

                                                  *Counsel to the Debtors Folts Home*
                                                  *and Folts Adult Home, Inc.*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Folts Home (2183) and Folts Adult Home, Inc. (7237).

## TABLE OF CONTENTS

## TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| ARTICLE I | DEFINITIONS | 1 |
| ARTICLE II | UNCLASSIFIED CLAIMS | 6 |
| ARTICLE III | CLASSIFICATION OF CLAIMS | 6 |
| ARTICLE IV | TREATMENT OF CLASSES | 8 |
| ARTICLE V | MEANS FOR EXECUTION OF THE PLAN | 9 |
| ARTICLE VI | PROCEDURE FOR RESOLVING DISPUTED CLAIMS AND IN RESPECT OF DISTRIBUTIONS | 10 |
| ARTICLE VII | EXECUTORY CONTRACTS | 12 |
| ARTICLE VIII | SATISFACTION, RELEASE AND INJUNCTION | 12 |
| ARTICLE IX | CAUSES OF ACTION | 14 |
| ARTICLE X | MODIFICATION OF THIS PLAN | 14 |
| ARTICLE XI | GENERAL PROVISIONS | 15 |
| ARTICLE XII | RETENTION OF JURISDICTION | 16 |

Folts Home (the "Debtor"), proposes the following plan of liquidation (this "Plan") pursuant to section 1121(a) of title 11 of the United States Code.

# ARTICLE I

# DEFINITIONS

For purposes of this Plan, the following terms shall have the respective meanings as hereinafter set forth. The capitalized terms used in this Plan shall at all times refer to terms defined in this Article I.

1.1  "Additional Surplus Funds" means the funds totaling up to $176,981.65, which were accrued by former receiver FRNC, LLC.

1.2  "Administrative Expense Claim" means any cost or expense of administration of the Chapter 11 Case allowed under section 503(b) of the Bankruptcy Code including, without limitation, any actual and necessary expenses of operating the Debtor's business together with all allowances of compensation or reimbursement of expenses to the extent allowed under section 330 of the Bankruptcy Code.

1.3  "Allowed" means, with respect to Claims, (a) any Claim against the Debtor, proof of which is timely filed or by order of the Bankruptcy Court is not or will not be required to be filed, (b) any Claim that has been or is hereafter listed in the Schedules of liabilities filed by the Debtor, as liquidated in amount and not disputed or contingent or (c) any Claim allowed pursuant to this Plan and, in each such case in (a) and (b) above, to which either (i) no objection to allowance has been interposed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (ii) such objection is so interposed and the Claim will have been allowed by a Final Order (but only to the extent so allowed).

1.4  "Assets" means the assets of the Debtor, including all real property, the Facility, accounts, chattel paper, machinery and equipment, furniture, personal property, contracts, inventory, supplies, intellectual property, computer equipment, permits and licenses, Causes of Action, books and documents, the Debtor's corporate name and general intangibles.

1.5  "Avoidance Actions" means any and all rights to recover or avoid transfers or to avoid any lien or interest under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or applicable non-bankruptcy law or state law, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

1.6  "Bankruptcy Code" means that version of title 11 of the United States Code, §§ 101, *et seq.*, as amended, that was in effect on the Petition Date.

1.7  "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of New York (Utica Division) in which the Chapter 11 Case is pending.

1.8    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Case under section 151 of title 28 of the United States Code.

1.9    "Cash" means cash, cash equivalents and readily marketable securities or instruments, including, but not limited to, bank deposits, certified or cashier's checks, timed certificates of deposit issued by any bank, commercial paper and readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof.

1.10    "Causes of Action" means claims, third-party claims, counterclaims, cross-claims, setoff, offset, or other defenses, claims and recoveries under any D&O policies or E&O policies, all choate and inchoate actions, rights of action, causes of action, causes in action, choses in action, Avoidance Actions, suits, debts, dues, sums of money, accounts, rights to payment, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, whether fixed, contingent, matured or unmatured, disputed or undisputed, secured or unsecured, and whether asserted or unasserted, known or unknown, direct or indirect, derivate, or otherwise, and the proceeds thereof, of ,or belonging to, the Debtor or its bankruptcy estate against any entity or person, based in law or equity, including, but not limited to, under the Bankruptcy Code or any applicable state law, whether asserted, commenced, or filed in the Bankruptcy Court, or any other court or tribunal.

1.11    "Cedarcare" means Cedarcare Holdings, LLC, its affiliates, assigns and designees.

1.12    "Cedarcare Purchase Agreement" means the Purchase Agreement dated as of June 1, 2017, entered into by and between the Debtor, FAH and Cedarcare, as amended on July 20, 2018.

1.13    "Chapter 11" means the provisions of chapter 11 of the Bankruptcy Code.

1.14    "Chapter 11 Case" means the bankruptcy case styled *In re Folts Home* pending in the Bankruptcy Court and assigned case number 17-60139 [Main Case], jointly administered with the bankruptcy case styled *In re Folts Adult Home, Inc.*, pending in the Bankruptcy Court and assigned case number 17-60140.

1.15    "Claim" means a claim against the Debtor as defined in section 101 of the Bankruptcy Code, *to wit*, (a) the right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; and (b) the right to an equitable remedy for breach of performance if such breach gives rise to a payment whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.16    "Claimant" means the holder of an Allowed Claim in the Bankruptcy Case.

3000188.3

2

1.17 "Class" means any group of Claims classified by the Plan pursuant to section 1121(a)(1) of the Bankruptcy Code.

1.18 "Confirmation Date" means the date the Confirmation Order is entered by the Bankruptcy Court.

1.19 "Confirmation Order" means the Order entered by the Bankruptcy Court confirming the Plan in accordance with Chapter 11.

1.20 "Creditor" means any Entity that holds a Claim against the Debtor.

1.21 "CRCMS" means CohnReznick Capital Markets Securities, LLC, the investment banker to the Debtor.

1.22 "Debtor" means Folts Home, the debtor with regard to the Chapter 11 Case.

1.23 "Disclosure Statement" means the Joint Disclosure Statement to Accompany the Chapter 11 Plans of Liquidation for Folts Home and Folts Adult Home, Inc., including, without limitation, all exhibits thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.24 "Disputed Claim" means (a) any claim (other than any Allowed Claim) which is scheduled as disputed, contingent or unliquidated or (b) any claim which has been filed pursuant to § 501(a) of the Bankruptcy Code and as to which an objection to the allowance thereof has been interposed within the time limitation fixed by the Bankruptcy Code or by the Order of the Bankruptcy Court, which objection has not been determined in whole or in part by a Final Order.

1.25 "Distributions" means the payments to the various Classes of Claims as provided in this Plan.

1.26 "Distribution Dates" means such date(s) as the Debtor shall establish, in its discretion, for making Distributions.

1.27 "DOH" means the New York State Department of Health.

1.28 "Effective Date" means a Business Day selected by the Debtor on or after the Confirmation Date on which the following conditions to the effectiveness of this Plan have been satisfied or waived: (i) the Confirmation Order shall have been entered; and (ii) the Confirmation Order shall be unstayed and shall have become a Final Order.

1.29 "Entity" means an individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof, or other person or entity, regardless of the form of the business organization.

3000188.3

1.30 "Facility" means the 163-bed skilled nursing facility previously owned by the Debtor and located at 104 North Washington Street, Herkimer, New York.

1.31 "FAH" means affiliate Folts Adult Home, Inc.

1.32 "Final Order" means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Case which has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceeding for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired.

1.33 "Folts Home Sale Proceeds" means the net cash in the amount of $11,951,928.00 received by the Debtor from the sale of the Debtor's Assets to Cedarcare.

1.34 "General Unsecured Claim" means any Claim arising prior to the Petition Date as against the Debtor, other than an Administrative Expense Claim, Priority Claim or Secured Claim.

1.35 "HUD" means the U.S. Department of Housing and Urban Development.

1.36 "Impaired" means any claim that is impaired in accordance with 11 U.S.C. § 1124.

1.37 "Interpleader Action" means the adversary proceeding styled *FRNC, LLC and FCADH, LLC v. HomeLife at Folts, LLC, et al.*, Adv. Pro. No. 18-80007 pending in the Bankruptcy Court.

1.38 "IRS" means the United States Internal Revenue Service.

1.39 "Liquidation" means the determination by the Debtor of the extent and nature of the Assets and its liabilities and the orderly liquidation of the Assets and distribution of the Sale Proceeds and other Cash.

1.40 "Liquidation Expenses" means the expenses incurred by the Debtor with regard to the Liquidation including, without limitation, Administrative Expense Claims.

1.41 "M&T DIP Account" means the Debtor in Possession account maintained at M&T Bank, in which the Debtor has deposited Cash in the amount of $11,003,615.21.

1.42 "NBT DIP Account" means the Debtor in Possession account maintained at NBT Bank, in which the Debtor has deposited Cash in the approximate amount of $25,022.33.

3000188.3

4

1.43    "Objection Deadline" has the meaning ascribed thereto in Section 6.1 of this Plan.

1.44    "Petition Date" means February 16, 2017, the date on which the Chapter 11 Case was commenced.

1.45    "Plan" means this Chapter 11 Plan of Liquidation for Folts Home and any amendments hereto or modification hereof made in accordance with chapter 11 of the Bankruptcy Code.

1.46    "Priority Claim" means the portion of an Allowed Claim entitled to priority under sections 507(a)(3) through 507(a)(8) of the Bankruptcy Code.

1.47    "Sale Closing" means September 7, 2018, the date on which title to the Assets passed to Cedarcare

1.48    "Schedules" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms of the Bankruptcy Rules, as such Schedules and Statement have been or may be supplemented or amended through the Confirmation Date.

1.49    "Secured Claim" means a Claim (i) secured by collateral, to the extent of the value of such collateral (a) as set forth in the Plan, (b) as agreed by the holder of such Claim and the Debtor, or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.50    "U.S. Trustee" means the Office of the United States Trustee for the Northern District of New York.

1.51    The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine and the neuter. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

3000188.3

## ARTICLE II

## UNCLASSIFIED CLAIMS

2.1    Administrative Expense Claims.  Allowed Administrative Expense Claims remaining to be paid in the Folts Home Chapter 11 Case consist of (i) professional fees for Debtors' counsel estimated at $375,000.00; (ii) professional fees for the Debtor's accountant, The Bonadio Group, to prepare 2017, 2018 and 2019 tax returns and related documents in the amount of $79,300.00; (iii) the allowed administrative expense claim of the DOH in the amount of $35,653.84; (iv) quarterly fees due the Office of the United States Trustee under 28 U.S.C. § 1930(a) for the second quarter of 2019 in the approximate aggregate amount of $111,311.74, and (v) the potential Allowed Administrative Expense Claim of Upstate in the amount of $175,000.00, if such amount is awarded to Upstate in connection with its appeal.  The Allowed Administrative Expense Claims in the Folts Home case total approximately **$601,265.58** without the Upstate Administrative Expense Claim, and total **$776,265.58** if the Upstate Administrative Expense Claim is included.

2.2    Treatment of Administrative Expense Claims.  Allowed Administrative Expense Claims will be paid in full, in Cash, on the Effective Date; however, no payment shall be made to any claimant in this Class until the Claim has been fixed and allowed by final and non-appealable order of the Bankruptcy Court.

## ARTICLE III

## CLASSIFICATION OF CLAIMS

3.1    Class 1 – HUD Secured Claim.  Class 1 consists of the Allowed Folts Home HUD Secured Claim which totals approximately $6,600,747.78 as of March 8, 2019.[2] HUD is in possession of the Folts Home Sinking Fund Account funds totaling $1,314,117.25 and the Folts Home Reserve for Replacement Account funds totaling $112,070.06.  Both of these account balances will be applied to reduce the amount of the Allowed Class 1 Claim.  The amount of the Allowed Class 1 Claim to be paid from the Folts Home Cash, therefore, will be approximately $5,174,560.47.  The holder of the Class 1 Claim shall be paid in full on the Effective Date.

3.2    Class 2 – IRS Secured Claim.  Class 2 consists of the IRS Secured Claim in the approximate amount of $176,183.65[3].  On March 6, 2019, the IRS filed Amendment No. 5 to Proof of Claim No. 11 in the Debtor's Case asserting a secured claim in the amount of $176,183.65 for unpaid withholding taxes, accrued interest and penalties due for the period of December 31, 2011 through September 30, 2013 secured by various federal taxes liens filed against the Folts Home Assets.  The holder of the Class 2 Claim shall be paid in full from the Folts Home Cash on the Effective Date.

---

[2] Interest will continue to accrue at an annual rate of 6.25% until the Folts Home Class 1 Claim is paid in full.
[3] Interest will continue to accrue at the statutory rate until the Folts Home Class 2 Claim is paid in full.

3000188.3

6

      3.3    Class 3 – Judgment Lien Secured Claims. Class 3 consists of holders of pre-petition judgments obtained against Folts Home, which judgments are secured by judgment liens covering the Folts Home real property. The principal amounts of the Class 3 Claims aggregate $743,455.04 and are separately categorized in the subclasses identified below:

      a)    Class 3a – Chem Rx Pharmacy Services, LLC Secured Claim – Class 3a consists of the Chem Rx Pharmacy Services, LLC Secured Claim in the approximate amount of $399,466.74.

      b)    Class 3b – Hill & Markes, Inc. Secured Claim – Class 3b consists of the Hill & Markes, Inc. Secured Claim in the approximate amount of $2,749.08.

      c)    Class 3c – Mountainside Medical Equipment, Inc. Secured Claim – Class 3c consists of the Mountainside Medical Secured Equipment, Inc. Claim in the approximate amount of $20,837.26.

      d)    Class 3d – National Grid Secured Claim – Class 3d consists of the National Grid Secured Claim in the approximate amount of $89,082.44.

      e)    Class 3e – NYS Department of Taxation and Finance Secured Claim – Class 3e consists of the NYS Department of Taxation and Finance Secured Claim in the approximate amount of $84,711.54.

      f)    Class 3f – Rochdale Insurance Company Secured Claim – Class 3f consists of the Rochdale Insurance Company Secured Claim in the approximate amount of $25,721.46.

      g)    Class 3g – Wesco Insurance Company Secured Claim – Class 3g consists of the Wesco Insurance Company Secured Claim in the approximate amount of $108,190.85.

      h)    Class 3h – Sysco Syracuse, Inc. Secured Claim – Class 3h consists of the Sysco Syracuse, Inc. Secured Claim in the approximate amount of $12,695.67.

      3.4    Class 4 – Priority Claims. Class 4 consists of Creditors holding Allowed Priority Claims. To date, (i) the New York State Department of Labor has filed a Priority Claim in the amount of $41,566.92; (ii) the DOH has filed a Priority Claim in the amount of $8,730.00; (iii) the NYS Department of Taxation and Finance has filed a Priority Claim in the amount of $49.72; and (iv) Guardian Life Insurance Company filed a Priority Claim in the amount of $4,000.00. All of the foregoing are Allowed Priority Claims. The Debtor is not aware of any other Priority Claims.

      3.5    Class 5 – General Unsecured Claims. Class 5 consists of all holders of General Unsecured Claims against Folts Home. Based upon its review of the Schedules and the Claims Register maintained by the Bankruptcy Court in connection with the Debtor's Chapter 11 Case, the Debtor estimates that the Class 5 Claims will aggregate approximately $5,075,948.28. The Class 5 Claims include Allowed General Unsecured Claims asserted by trade vendors and

others in the approximate aggregate amount of $1,968,969.03 and by the DOH in the amount of $3,064,527.40 for unpaid pre-receivership cash receipts assessments.

# ARTICLE IV

## TREATMENT OF CLASSES

4.1    Class 1 – HUD Secured Claim.

(a)    Distribution. The holder of the Class 1 Claim shall be paid in full, plus interest at the contract rate, from the Folts Home Cash on the Effective Date.

(b)    Impairment and Voting. The holder of the Class 1 Claim is not Impaired and shall not be entitled to vote to accept or reject the Plan. Accordingly, the holder of the Class 1 Claim is deemed to have accepted the Plan.

4.2    Class 2 – IRS Secured Claim.

(a)    Distribution. The holder of the Class 2 Claim shall be paid in full, plus interest at the statutory rate, from the Folts Home Cash on the Effective Date.

(b)    Impairment and Voting. The holder of the Class 2 Claim is not Impaired and shall not be entitled to vote to accept or reject the Plan. Accordingly, the holder of the Class 2 Claim is deemed to have accepted the Plan.

4.3    Class 3 – Judgment Lien Secured Claims.

(a)    Distribution. The holders of Class 3 Claims will be paid in full, plus interest at the annual adjusted federal judgment rate, from the Folts Home Cash in full on the Effective Date prior to any distribution to any holder of a Claim in Class 4.

(b)    Impairment and Voting. Holders of Class 3 Claims are not Impaired and shall not be entitled to vote to accept or reject the Plan. Accordingly, the holders of the Class 3 Claims are deemed to have accepted the Plan.

4.4    Class 4 – Priority Claims.

(a)    Distributions. Each holder of an Allowed Class 4 Claim shall be paid with priority as set forth in § 507(a) of the Bankruptcy Code, in full plus interest at the annual adjusted federal judgment rate, on the Effective Date from the Folts Home Cash, prior to any distribution to any holder of a Claim in Class 5.

(b)    Impairment and Voting. The holders of Class 4 Claims are Impaired and shall be entitled to vote to accept or reject the Plan.

4.5     Class 5 – General Unsecured Claims.

(a)     Distributions. No payment shall be made to any claimant in this Class unless and until (i) all Class 1, 2, 3 and 4 Claims have been paid in full and (ii) such General Unsecured Claim has been fixed and allowed by a Final Order of the Bankruptcy Court or determined to be undisputed, liquidated and not contingent (the "Date of Allowance"). Each holder of an Allowed Class 5 Claim shall be paid in full from the Folts Home Cash on the Effective Date or the Date of Allowance. The Class 5 General Unsecured Claims shall be paid a dividend equal to approximately 85.58%[4] of their Allowed Claims, without interest.

(b)     Impairment and Voting. Holders of Class 5 Claims are Impaired and shall be entitled to vote to accept or reject the Plan.

## ARTICLE V

## MEANS FOR EXECUTION OF THE PLAN

5.1     Distribution Sources and Methods. The Cash required to fund Distributions to be made to Claimants under this Plan will be funded from the Debtor's Cash. To the extent that additional Assets of the Debtor are hereafter recovered and/or liquidated, the proceeds will be placed in the NBT DIP Account and used to fund Distributions under the Plan.

5.2     Persons Authorized to Implement Plan. Upon confirmation, the Debtor and Bond, Schoeneck & King, PLLC, as counsel to the Debtor, shall be empowered and authorized to (i) act as disbursing agents in connection with all Distributions to be made under the Plan and (ii) perform all acts and to execute all documents and instruments necessary to implement and fully consummate this Plan. Bond, Schoeneck & King, PLLC shall be paid in accordance with the Court's orders relating to its appointment and payment.

5.3     Excess Proceeds. In the unlikely event that Assets remain after payment in full of all Creditor Claims ("Excess Proceeds"), such Excess Proceeds shall be held by the Debtor and paid in accordance with such order as may be entered by the New York State Supreme Court, Herkimer County, pursuant to sections 1001 and 1002 of the New York Not-for-Profit Corporation Law.

5.4     Dissolution of Corporate Entity. Following the entry of an Order closing the Chapter 11 Case, the Debtor's representatives shall, in their discretion, take any and all steps deemed necessary to properly dissolve the Debtor's corporate entity in accordance with Sections 510 and 511 of the New York Not for Profit Corporation Law.

---

[4] The Class 5 General Unsecured Claims will total $5,250,948.28 if a general unsecured claim in the amount of $175,000.00 is Allowed on behalf of Upstate. In that event, the pro rata distribution to the Class 5 Claimants will be approximately 82.73%. If an Administrative Expense Claim in the amount of $175,000.00 is Allowed on behalf of Upstate, the resulting distribution to the Class 5 General Unsecured Creditors will be approximately 82.14%.

3000188.3

9

# ARTICLE VI

## PROCEDURE FOR RESOLVING DISPUTED CLAIMS AND IN RESPECT OF DISTRIBUTIONS

6.1 <u>Objection Deadline</u>. As soon as practicable, but in no event beyond twenty days after the Effective Date, unless otherwise authorized by the Bankruptcy Court upon *ex parte* motion by the Debtor (the "Objection Deadline"), the Debtor shall file objections to Claims with the Bankruptcy Court and serve such objections upon the holders of each of the Claims to which objections are made.

6.2 <u>Authority to Oppose Claims and Prosecute Estate Causes of Action</u>. Subject to all necessary approvals from the Bankruptcy Court, the Debtor shall have the exclusive privilege of objecting to, disputing, defending against, and otherwise opposing, and the making, asserting, filing, litigation, settlement or withdrawal of all objections to, Claims. The Debtor shall have the power to preserve, fail to preserve, settle, compromise or litigate any Claim or Cause of Action (except for any Claims or Causes of Action released or to be released pursuant to or in connection with this Plan) before any applicable or appropriate court, panel, agency or tribunal (including, where appropriate, the Bankruptcy Court) that the Debtor may have against any Entity based on acts, omissions or events prior to the Effective Date. The Debtor shall continue to retain the services of Bond, Schoeneck & King, PLLC, which shall be paid for services rendered during the post-confirmation period by the Debtor's estate.

6.3 <u>No Distributions on Disputed Claims Pending Allowance</u>. Notwithstanding any other provision in this Plan, no payment or Distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Claim becomes an Allowed Claim consistent with this Plan.

6.4 <u>No Distribution in Excess of Amount of Allowed Claim</u>. No holder of an Allowed Administrative Expense Claim or Allowed Class 5 Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim. Allowed Class 1, Class 2, Class 3 and Class 4 Claims shall be paid post-petition interest at the (i) contract rate, (ii) applicable statutory rate, or (iii) annual adjusted federal judgment rate.

6.5 <u>Determination by Bankruptcy Court</u>. The amount of any Disputed Claim, and the rights of the holder of such Claim, if any, to payment in respect thereof shall be determined by the Bankruptcy Court, unless it shall have sooner become an Allowed Claim.

6.6 <u>Unclaimed Property/Unclaimed Personal Property</u>. If any Distribution remains unclaimed for a period of sixty (60) days after it has been delivered (or attempted to be delivered) in accordance with this Plan to the holder entitled thereto, such unclaimed property shall be forfeited by such holder. The holder of the Allowed Claim previously entitled to such unclaimed property shall cease to be entitled thereto, and such property shall, to the extent practicable in the Debtor's sole discretion, be redistributed to the holders of Allowed Claims pursuant to this Plan, treated as Excess Proceeds as described in paragraph 5.3 above or deposited with the Clerk of the Bankruptcy Court.

6.7    **Third Party Agreements; Subordination.** Except as set forth herein, Distributions to the various Classes of Claims hereunder shall not affect the right of any Entity to levy, garnish, attach or employ any other legal process with respect to such Distributions by reason of any claimed contractual subordination rights, or otherwise. Distributions made by the Debtor shall not be inconsistent with such contractual subordination provisions and may be modified only by a Final Order directing that Distributions be made other than as provided in the Plan and Confirmation Order; provided, however, that the Debtor (or any of its agents, members, representatives, professionals or employees) shall not be liable to any Entity on account of distributions which are ultimately determined to be inconsistent with inter-creditor contractual subordination agreements or rights unless such Distributions were made in bad faith or with malicious intent.

6.8    **Transmittal of Distributions and Notices**

(a)    Any property or notice which an Entity is or becomes entitled to receive pursuant to this Plan may be delivered by regular mail, postage prepaid, in an envelope addressed to that Entity at the address indicated on any notice of appearance filed in this Chapter 11 Case by that Entity or its authorized agent prior to the Effective Date. If no notice of appearance has been filed, notice shall be sent to the address indicated on a properly filed proof of claim or, absent such a proof of claim, the address set forth in the relevant Schedule of Assets and liabilities for that Entity. Property distributed in accordance with this section shall be deemed delivered to such Entity regardless of whether such property is actually received by that Entity.

(b)    A holder of an Administrative Expense Claim or Claim may designate a different address for notices and/or Distributions by notifying the Debtor in writing of that address. Any change of address of a party entitled to receive Distributions hereunder must be provided to the Debtor by registered mail in order to be effective. Such notification shall be effective upon receipt by the Debtor.

6.9    **Disputed Payment.** If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Debtor may, in lieu of making a Distribution to such Entity, make such Distribution into a Disputed Claims Reserve until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute. The Debtor shall not have any liability if it acts in accordance with this section.

6.10    **Withholding Taxes and Expenses of Distribution.** No federal, state or local withholding taxes or other amounts required to be withheld under applicable law will be deducted from Distributions made pursuant to this Plan. All Entities holding Claims and receiving Distributions under the Plan are responsible for paying to the appropriate taxing authorities the required amounts as defined in the applicable tax codes.

6.11    **Method of Cash Distributions.** Any Cash payment to be made by the Debtor pursuant to this Plan will be in U.S. dollars and will be made by check.

3000188.3

11

6.12  **Fractional Cents/De Minimis Payment.**  When any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of less than $0.50 and rounding up in the case of $0.50 or more); provided, however, that in no event will an amount less than $1.00 be distributed.

6.13  **Distributions on Non-Business Days.**  Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

## ARTICLE VII

## EXECUTORY CONTRACTS

7.1  **Rejection of Executory Contracts.**  To the extent that any executory contract or unexpired lease remains which has not been expressly assumed and assigned to a third party by the Effective Date, such executory contract and lease shall be deemed rejected on the Effective Date.

7.2  **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.**  Any creditor whose Claim arises from the rejection of an executory contract or unexpired lease shall have fourteen days from the service upon them of a copy of the Confirmation Order to file a Proof of Claim with the Bankruptcy Court regarding such rejection. To the extent such Claim becomes an Allowed Claim, any such person shall have the rights of a Class 5 Claimant with respect thereto. If such Proof of Claim is not filed within the time specified herein, it shall be forever barred from assertion against the Debtor or its property.

## ARTICLE VIII

## SATISFACTION, RELEASE AND INJUNCTION

8.1  **Discharge and Release.**  On the Effective Date, the Debtor and its respective Assets and properties will be discharged and released from any debt, charge, liability, encumbrance, security interest, lien, assignment, Claim, interest, or other Cause of Action of any kind, nature or description (including, but not limited to, any claim of successor liability) that arose before the Effective Date, and any debt of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of claim is filed or is deemed filed, whether or not such Claim is Allowed, and whether or not the holder of such Claim has voted on the Plan including, without limitation, liabilities arising under environmental laws in respect of the Debtor, or any of the Debtor's successors or assigns or their respective Assets or properties, which result, in whole or in part, from any condition, event, occurrence or happening prior to the Effective Date, whether known or unknown, discovered or undiscovered, asserted or unasserted, latent or patent, and regardless of whether any Claim was, is, or could have been asserted for such liability, and upon such discharge and release, no such liabilities shall be obligations, liabilities, claims, liens or encumbrances against the Debtor, and the Debtor's Assets, whether under the doctrine of successor liability or otherwise.

8.2 **Full Satisfaction**. Furthermore, but in no way limiting the generality of the foregoing, except as otherwise specifically provided by the Plan, the distributions and rights that are provided in the Plan will be in complete satisfaction, discharge and release, effective as of the Effective Date of (i) all Claims and Causes of Action against, liabilities of, liens on, charges, encumbrances, security interests, obligations of and interests in the Debtor, the Debtor's Assets, or the direct or indirect Assets and properties of the Debtor, whether known or unknown, and (ii) all Causes of Action, whether known or unknown, either directly or derivatively through the Debtor, or the successors and assigns of the Debtor based on the same subject matter as any Claim or any other interests, in each case, regardless of whether a proof of Claim was filed, whether or not Allowed, and whether or not the holder of the Claim has voted on the Plan, or based on any act or omission, transaction or other activity or security, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date that was or could have been the subject of any Claim, in each case regardless of whether a Proof of Claim form was filed, whether or not Allowed and whether or not the holder of the Claim has voted on the Plan.

8.3 **Injunction Through Effective Date**. Except as expressly provided for in the Plan, all injunctions, liens or stays entered in the Chapter 11 Case and existing immediately before the Effective Date will remain in full force and effect until the Effective Date.

8.4 **Exculpation**. The Debtor and its respective counsel, present and former members, officers, directors, representatives, employees, advisors, attorneys and agents acting in such capacity shall have no liability whatsoever to any holder or purported holder of an Administrative Expense Claim or Claim for any act or omission specifically in connection with, or arising out of, the Plan, the Disclosure Statement, the negotiation of the Plan, the pursuit of approval of the Disclosure Statement or the solicitation of votes for confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or the Disclosure Statement or in furtherance thereof, except for willful misconduct or gross negligence as determined by a Final Order, and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. This Exculpation clause shall not be effective concerning the conduct of this Chapter 11 Case generally.

Nothing in this section shall (i) be construed to exculpate any entity from fraud, gross negligence, willful misconduct, malpractice, criminal conduct, misuse of confidential information that causes damages, or ultra vires acts or (ii) limit the liability of the professionals of the Debtor to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8, Rule 1.8(h)(1) (2009).

8.5 **Permanent Injunction**.

(a) Except as expressly provided for in the Plan, all Entities are precluded and permanently enjoined from asserting against: (i) the Debtor and/or (ii) the officers, members, directors and shareholders thereof, and/or (iii) the respective Assets and property of any of the foregoing, any Claim, which is discharged or satisfied pursuant to the Plan.

(b) <u>Scope of Release and Injunction Hereunder</u>. The injunction and release provisions set forth in the Plan, only release and enjoin prosecution of (a) any Claims discharged under the Plan, (b) Claims satisfied under the Plan and (c) Claims and causes of action which are released, cancelled or compromised by the Debtor pursuant to the Plan, as set forth therein.

8.5 <u>Binding Effect</u>. On the Effective Date, according to section 1141 of the Bankruptcy Code, the provisions of the Plan will bind the Debtor, any Entity acquiring Assets under the Plan, and any holder of a Claim, whether or not the Claim is Impaired under the Plan and whether or not the holder of the Claim has accepted the Plan.

## ARTICLE IX

## CAUSES OF ACTION

9.1 The Debtor continues to analyze potential causes of action under sections 544, 545, 546, 547, 548, 549, 550, 551, 553 and 554 of the Bankruptcy Code (the "Avoidance Actions"). In light of the fact that the Debtor surrendered its Operating Certificate and has been operated by receivers since October 1, 2013, there were few, if any, avoidable transfers made during the applicable statutory periods. Further, all of the Allowed Claims in this Chapter 11 Case will be paid in full. Accordingly, the Debtor does not anticipate prosecuting any Avoidance Actions in this Chapter 11 Case.

## ARTICLE X

## MODIFICATION OF THIS PLAN

10.1 <u>Modification</u>. The Debtor reserves its right, according to the Bankruptcy Code, to amend or modify the Plan before its substantial consummation. After the Confirmation Date, the Debtor may, upon order of the Bankruptcy Court, and according to section 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intentions of the Plan. A Claimant that has accepted or rejected the Plan will be deemed to have either accepted or rejected, as the case may be, the Plan as modified or amended, even if the modifications or amendments are made after the solicitation of votes of acceptance or rejection of the Plan, unless the Bankruptcy Court orders that such Claimant may change its previous vote within a time established by the Bankruptcy Court for such change to be made.

10.2 <u>Prior Votes on Modification</u>. A Claimant that has accepted or rejected this Plan will be deemed to have either accepted or rejected, as the case may be, this Plan as modified or amended, even if the modifications or amendments are made after the solicitation of votes of acceptance or rejection of this Plan, unless the Bankruptcy Court orders that such Claimant may change its previous vote within a time established by the Bankruptcy Court for such change to be made.

3000188.3

## ARTICLE XI

## GENERAL PROVISIONS

11.1  <u>Notices</u>.  Except as otherwise specified, all notices and requests will be given by any written means, including but not limited to, telex, telecopy, telegram, facsimile, electronic mail, first class mail, express mail or similar overnight delivery service and hand delivered letters, and any such notice or request will be deemed to have been given when received.  Notices will be delivered as follows:

To the Debtor:

Stephen A. Donato, Esq.
Camille W. Hill, Esq.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York  13202
Phone:(315) 218-8000
Fax:  (315) 218-8100
Email:  sdonato@bsk.com
        chill@bsk.com


To the Office of the U.S. Trustee:

Office of the United States Trustee
Attn: Guy A. Van Baalen, Esq.
105 U.S. Courthouse, 10 Broad Street
Utica, New York  13501
Phone: (315) 793-8191
Fax: (315) 793-8133
Email:  Guy.A.VanBaalen@usdoj.gov

11.2  <u>Confirmation by Non-Acceptance Method.</u>  The Debtor hereby requests confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not vote to accept this Plan.

11.3  <u>Payment of Statutory Fees.</u>  All fees payable pursuant to 28 U.S.C. § 1930 of the United States Code will be paid until the Court enters a Final Decree closing the Chapter 11 Case.

11.4  <u>Headings</u>.  The headings used in this Plan are inserted for convenience only and constitute neither part of this Plan nor in any manner affect the provisions or interpretations of this Plan.

3000188.3

11.5 <u>Enforceability.</u> Should any provision of this Plan be determined to be unenforceable for any reason, such determination will in no way limit or affect the enforceability or operative effect of any other provision of this Plan.

11.6 <u>Exemption from Transfer Taxes.</u> Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes, documents, agreements, or instruments under this Plan, in furtherance of, or in connection with this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

11.7 <u>Closing of Chapter 11 Case.</u> The Chapter 11 Case shall be closed on the earliest date possible after the Plan is substantially consummated and upon the Court's approval of the final report filed by the Debtor.

## ARTICLE XII

## RETENTION OF JURISDICTION

12.1 The Bankruptcy Court will retain jurisdiction of all matters arising out of or related to the Chapter 11 Case and this Plan as long as necessary for the purposes of sections 105(a), 1127, 1142(a) and 1144 of the Bankruptcy Code and for, *inter alia*, the following non-inclusive purposes:

(a) to decide any objections to the allowance, disallowance or subordination of Claims or a controversy as to the classification of Claims;

(b) to decide and fix Claims and any other fee and expense authorized to be paid or reimbursed under the Bankruptcy Code;

(c) to liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any Disputed, contingent or unliquidated Claims;

(d) to adjudicate any matters as may be provided for in the Confirmation Order;

(e) to adjudicate all matters arising out of or related to Section 8.4 (Exculpation) of the Plan.

(f) to effectuate Distributions under and enforce the provisions of this Plan;

(g) to hear and determine any pending applications, adversary proceedings or contested matter including all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of this Plan, and matters concerning state, local and federal taxes according to sections 346, 505 and 1146 of the Bankruptcy Code;

3000188.3

    (h) to amend or to correct any defect, cure any omission or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan;

    (i) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

    (j) to consider any modification of this Plan pursuant to section 1127 of the Bankruptcy Code or modification of the Plan after substantial consummation, as such term is defined in section 1101(2) of the Bankruptcy Code;

    (k) to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code to the maximum extent of its jurisdiction; and

    (l) to enter a final decree closing the Chapter 11 Case.

[The remainder of this page is intentionally left blank; signature page follows]

Dated: March 12, 2019
Herkimer, New York

FOLTS HOME

By: _____
Dr. Anthony E. Piana
Chairman, Board of Directors

Dated: March 12, 2019
Syracuse, New York

BOND, SCHOENECK & KING, PLLC

By: _____
Stephen A. Donato, Esq., Bar Roll No. 101522
Camille W. Hill, Esq., Bar Roll No. 501876
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202
Telephone: (315) 218-8000
Email: sdonato@bsk.com
       chill@bsk.com

*Attorneys for debtors Folts Home and Folts Adult Home, Inc.*

3000188.3